**A.V. BY VERSACE, INC., Plaintiff,**

v.

**GIANNI VERSACE, S.p.A. and Alfredo Versace, Defendants.**

and

**Gianni Versace, S.p.A., Third–Party Plaintiff,**

v.

**Anthony J. Pellegrino, Patrick Marano, Transportation Services, Inc., TSI Equipment, Inc., and John Does 1–10, Third–Party Defendants.**

**Gianni Versace, S.p.A., Plaintiff,**

v.

**Alfredo Versace and Foldom International (U.S.A.), Inc., Defendants.**

**Nos. 96 CIV. 9721(PKL)(THK), 98 CIV. 0123(PKL)(THK).**

United States District Court, S.D. New York.

Aug. 21, 2001.

Phillips, Nizer, Benjamin, Krim & Ballon LLP, David E. Jacoby, New York City, for Gianni Versace, S.p.A.

Brian J. Holzberg, Melville, NY, for Alfredo Versace.

## OPINION AND ORDER

LEISURE, District Judge.

In this trademark infringement action, Alfredo Versace (hereinafter "Alfredo") seeks leave to amend his Answer to include a counterclaim in *Gianni Versace, S.p.A. v. Alfredo Versace and Foldom Int'l (U.S.A.), Inc.* (hereinafter the "*Foldom* Action"). In the same action, Gianni Versace, S.p.A. (hereinafter "Gianni") seeks an order to disqualify Alfredo's counsel, Bryan Holzberg, Esq. For the reasons set forth herein, Gianni's motion to disqualify Holzberg is denied and Alfredo's motion to amend his Answer is likewise denied.

## BACKGROUND

Gianni is a world-famous design house founded in the 1970s by the late Italian designer, Mr. Gianni Versace. Gianni owns a number of famous trademarks incorporating the name "Versace," as well as its signature "Medusa" trademarks. A.V. By Versace, Inc. (hereinafter "A.V.") is a Texas corporation originally formed by Alfredo, Anthony Pellegrino, and Patrick Marano. A.V. is a manufacturer of clothing and athletic shoes bearing the trademarks "A.V. By Versace" and "Alfredo Versace," pursuant to an alleged license with Alfredo, an Italian citizen and United States resident alien.

## I. The *A.V.* Action

The factual background of this action has been set forth in greater detail in this Court's January 4, 2001, Opinion and Order, *see A.V. By Versace, Inc. v. Gianni Versace, S.p.A.,* 126 F. Supp.2d 328 (S.D.N.Y.2001), familiarity with which the Court assumes. In December 1996, A.V. commenced an action (hereinafter the "*A.V.* Action") against both Gianni and Alfredo after its customer, Kinney Shoe Corporation d/b/a Foot Locker (hereinafter "Foot Locker"), received a "cease and desist" letter from Gianni's attorneys alleging that Foot Locker's sales of "A.V. By Versace" and "Alfredo Versace" clothing and shoes infringed various Gianni trademarks. As to Gianni, A.V. sought (1) declaratory relief, declaring that its products do not infringe Gianni's registered trademarks; (2) injunctive relief, enjoining Gianni from sending further "cease and desist" letters to A.V.'s customers; and (3) damages, under theories of unfair competition and tortious interference with contract. *See A.V. by Versace v. Gianni Versace,* No. 96 Civ. 9721, 1997 WL 31247, at *1 (S.D.N.Y.1997). Against Alfredo, A.V. requested (1) declaratory relief, ruling that (a) it has the sole right to use the mark "Alfredo Versace," and (b) if the mark is registered in the United States, it must be assigned the registration; and (2) compensatory and punitive damages. *See id.*

On January 28, 1997, this Court denied A.V.'s request for a preliminary injunction against the two defendants that would have prohibited both from using the mark

"Alfredo Versace," based on A.V.'s failure to demonstrate a likelihood of irreparable harm. *See id.* at *2–*3. Gianni subsequently filed counterclaims, a cross-claim, and third-party claims of trademark infringement and unfair competition against A.V. and third-party defendants Anthony Pellegrino and Patrick Marano. *See A.V. By Versace, Inc. v. Gianni Versace, S.p.A.,* No. 96 Civ. 9721, 1998 WL 832692, at *1 (S.D.N.Y. Dec. 1, 1998).

## II. The *Foldom* Action and Judge Stein's Preliminary Injunction

On January 8, 1998, Gianni filed a separate lawsuit against Alfredo and Foldom International (U.S.A.), Inc. (hereinafter "Foldom"), alleging trademark infringement, unfair competition, and trademark dilution in violation of the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a), and 1125(c); trademark dilution, pursuant to New York General Business Law § 360–l; and trademark infringement and unfair competition under New York common law. *See Foldom* Compl. ¶ 1. Gianni claimed that Alfredo and Foldom were manufacturing and selling products that infringed Gianni's registered trademarks, and/or licensing or franchising such infringing trademarks. *See id.* ¶ 17. These products allegedly included men's and women's suits, jeans, teeshirts, sweaters, active wear, handbags, leather goods, and packaging bearing the names "AV Versace," "Versace by A.V.," or "Alfredo Versace." *Id.* ¶ 18. By its complaint, Gianni sought a preliminary injunction enjoining Alfredo and Foldom from using "its trademarks or trade dress or any designation so similar as likely to cause confusion, mistake or deception," including "Alfredo Versace," "A.V. by Versace," "Versace by A.V." and "A. Versace." *Id.* ¶ A. In addition, Gianni sought compensatory and punitive damages. *See id.* ¶ C, E–G. The case was originally assigned to the Honorable Sidney H. Stein, United States District Judge of this Court.

On February 4, 1998, Judge Stein granted Gianni's request for a preliminary injunction, issuing his decision from the bench. *See* Feb. 4, 1998 Conference Transcript at 3–17. On July 30, 1998, Judge Stein stayed the *Foldom* Action, pending the resolution of the *A.V.* Action. *See A.V.,* 1998 WL 832692, at *1 (quoting Order of July 30, 1998, *Gianni Versace, S.p.A. v. Versace,* 98 Civ. 0123(SHS)). On December 1, 1998, this Court consolidated the *A.V.* Action with the *Foldom* Action, concluding that "[m]any common questions of both law and fact exists between the [two actions]." *A.V.,* 1998 WL 832692, at *2. The Court found that "[t]he complaint filed by [Gianni] in the *Foldom* action seeks similar relief [to that of its cross-claim in the *A.V.* Action], overlapping substantially with the cross-claim." *Id.* In addition, the Court lifted a stay on the *Foldom* action that had been in effect since July 30, 1998. Thereafter, on January 19, 1999, Alfredo filed his Answer in the *Foldom* action. In his Answer, Alfredo asserted various affirmative defenses but no counterclaims.

On March 6, 2000, this Court found Alfredo in civil contempt for violating the preliminary injunction. *See A.V.,* 87 F.Supp.2d 281, 294–95 (S.D.N.Y.2000). Specifically, this Court held that Alfredo violated the preliminary injunction by using offshore Internet sites to advertise and distribute his products in the United States. *See id.* at 295. As a result of this violation, the Court ordered Alfredo to pay Gianni the sum of one-third of its costs and attorneys' fees incurred in making the contempt motion. *See id.* at 296. After reviewing Gianni's affidavits and time records for its motion, the Court ordered that Alfredo remit $31,031.39 to Gianni as a result of his contemptuous conduct. *See*

*Gianni Versace v. Alfredo Versace,* No. 98 Civ. 0123, 2000 WL 739569, at *3 (S.D.N.Y 2000).

On November 20, 2000, a discovery hearing was held before Magistrate Judge Theodore Katz, Chief Magistrate Judge for the Southern District of New York, to whom discovery of this action has been referred. At this hearing, Magistrate Judge Katz addressed Alfredo's refusal to cooperate with Gianni's repeated discovery requests, despite three Court Orders directing him to comply with such discovery requests. Magistrate Judge Katz informed the parties that he would sanction Alfredo for his conduct. *See* Nov. 20, 2000 Conference Transcript at 17 ("Let me just tell you this, and in my mind there's no question that Mr. Versace's conduct is sanctionable. The only issue for me is the degree of sanctions to be imposed."). In addition, Magistrate Judge Katz informed the parties that he was giving "serious consideration" to striking Alfredo's answer to this action and "essentially, have a default being entered as to Mr. Versace." *Id.* at 17–18. However, Magistrate Judge Katz has not yet ruled on what sanctions he will impose against Alfredo.

On December 14, 2000, this Court issued a default judgment against Foldom. On January 4, 2001, this Court clarified Judge Stein's preliminary injunction, finding that the injunction applies extraterritorially. On February 21, 2001, Gianni filed a motion to disqualify Alfredo's present attorney,[1] Brian J. Holzberg, Esq., from serving as counsel to Alfredo. On March 9, 2001, Alfredo filed a motion for leave to amend his Answer to add a single counterclaim. The Court will address each motion in turn.

**DISCUSSION**

**I. Motion to Disqualify**

Gianni claims that Disciplinary Rules 5–102(a) and (b) of the Code of Professional Responsibility (hereinafter "D.R. 5–102(a)—(b)") require Holzberg to withdraw or be disqualified because Gianni intends to call Holzberg as a witness at trial and his testimony would likely be prejudicial to Alfredo. *See* Memorandum of Law of Gianni Versace in Support of its Motion to Disqualify Bryan J. Holzberg, Esq. (hereinafter "Gianni Mem. to Disqualify") at 3. Gianni's motion centers around a March 10, 2000 meeting of Holzberg, Alfredo, and Helen Law. Law is the Director of Venus de Chine Marketing Ltd., a Hong Kong corporation who serves as a distributor of Alfredo's goods. *See* Affirmation of Helen Law, sworn to on March 9, 2001 (hereinafter "Law Aff.") at ¶ 2. Gianni contends that, in November 2000, it learned from other sources that Alfredo had entered into a license agreement on March 10, 2000 for the use of the trademark "Designed by Alfredo Versace" on watches, which violated the preliminary injunction. Gianni also learned that Holzberg had written and signed a letter on March 24, 2000, addressed "To Whom It May Concern" which discussed a March 10, 2000 global license for watches. *See* Letter from Brian Holzberg, Esq., "To Whom it May Concern," dated March 24, 2000, at 1. The letter, which Alfredo had not produced during discovery, states:

I am United States counsel to Mr. Alfredo Versace and the Versace Boutique, Inc. of the Bahamas. The trademarks, brandnames and labels "DE-

---

1. This case has been complicated by the fact that Alfredo has repeatedly changed attorneys at critical junctures of the proceedings. Holzberg is Alfredo's fifth attorney in this action. *See* Reply Memorandum of Law in further support of Motion of Gianni Versace S.p.A. to disqualify Bryan J. Holzberg, Esq. (hereinafter "Gianni Rep. Mem.") at 6.

SIGNED BY ALFREDO VERSACE" "ALFREDO VERSACE" with the "Janus Head" and "DESIGNED BY ALFREDO VERSACE" with the "Janus Head" are the Common Law properties of Mr. Alfredo Versace.

This letter serves to confirm that Globe Legend, Ltd. (of Hong Kong) has been endorsed by Mr. Alfredo Versace, the Versace Boutique, Inc. to manufacture and distribute timepieces worldwide exclusively, effective March 10, 2000, for three (3) full years. All these time piece products must bear the above-mentioned trademark "DESIGNED BY ALFREDO VERSACE", and this provision must be strictly adhered to, unless the foreign distribution site provides otherwise.

*Id.* Gianni contends that this letter raises a "serious issue," because it is "possible, if not probable" that Gianni would call Holzberg as a witness at trial. *See* Gianni Mem. to Disqualify at 3. Gianni intends to introduce Holzberg's testimony to establish that Alfredo knowingly violated the preliminary injunction in force against him and that Alfredo and Holzberg were actively recruiting prospective investors in direct violation of the preliminary injunction. *See id.*

According to Holzberg, however, he had no knowledge of the discovery Orders at the time of the March 10, 2000 meeting. *See* Affirmation of Bryan J. Holzberg, Esq., dated December 1, 2000 (hereinafter "Holzberg Aff.") at ¶ 2. Instead, Holzberg

maintains that he prepared the letter for Helen Law after receiving a phone call from Alfredo and Law during which they stressed the need for an immediate response.[2] *See id.* ¶ 3. Holzberg maintains that Law needed the letter in order to provide to overseas investors, and that he annexed a copy of the preliminary injunction to the letter.[3] *See id.* ¶ 4.

According to Alfredo, however, he and Law negotiated the terms and conditions of a watch distribution agreement at the March 10, 2000 meeting. At the end of that meeting, Alfredo contends that he requested Holzberg's assistance because the proposed manufacturer of the watches, Globe Legend, Ltd., required a letter from his counsel verifying his relationship with Law. *See* Affidavit of Alfredo Versace, sworn to on March 7, 2001 at ¶ 4. Alfredo concedes that Holzberg was not his counsel of record as of this date, but claims that he called on Holzberg because of time constraints and the fact that he was in the midst of a financial dispute with Tunick, Kupferman & Creadore, P.C., his attorneys of record at the time.[4] *See* Holzberg Aff. at ¶ 3.

## A. Standard for Attorney Disqualification

■■■ District courts have broad discretion to disqualify attorneys. *See Kubin v. Miller*, 801 F.Supp. 1101, 1113 (S.D.N.Y. 1992); *see also U.S. v. Perlmutter*, 637 F.Supp. 1134, 1137 (S.D.N.Y.1986). Dis-

---

**2.** Although the letter is dated March 24, 2000, Holzberg contends that it was written on March 10, 2000. Neither Holzberg nor Alfredo addresses this two-week discrepancy in dates in their moving papers.

**3.** On its face, the Holzberg letter makes no reference to an attachment or enclosure.

**4.** In a letter received by the Court on February 10, 2000, Theodore R. Kupferman, Esq.,

asked the Court to relieve his firm as counsel of record for Alfredo "as I do not want to be held in violation of a Court Order" because Alfredo "refuses to provide the information" ordered to be produced by Magistrate Judge Katz. *See* Letter from Theodore R. Kupferman, Esq., to the Court, received Feb. 10, 2000, attached as Ex. G to Affidavit of David E. Jacoby, Esq., sworn to on Feb. 21, 2001.

qualification, however, is a "drastic measure" that is viewed with disfavor because it impinges on a party's right to employ the counsel of its choice. *See First Interregional Advisors Corp. v. Wolff,* 956 F.Supp. 480, 489 (S.D.N.Y.1997) (Chin, J.). Additionally, disqualification motions are subject to strict scrutiny because of their potential to be used for tactical purposes or to "stall and derail the proceedings." *See S & S Hotel Ventures Ltd. P'ship v. 777 S.H. Corp.,* 69 N.Y.2d 437, 443, 515 N.Y.S.2d 735, 508 N.E.2d 647 (1987) (Kaye, J.). Therefore, the proponent of disqualification bears a "heavy burden" of proof to show that disqualification is necessary, and "mere speculation will not suffice." *Russo v. Friedman,* No. 91 Civ. 6913, 1992 WL 196791, at *8 (S.D.N.Y. 1992) (Sand, J.) (citing *Paretti v. Cavalier Label Co., Inc.,* 722 F.Supp. 985, 986 (S.D.N.Y.1989)). Finally, the Second Circuit has instructed district courts to take a "restrained approach that focuses primarily on preserving the integrity of the trial process" when deciding disqualification motions. *Armstrong v. McAlpin,* 625 F.2d 433, 444 (2d Cir.1980), *vacated on other grounds,* 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981). Indeed, the "mere appearance of impropriety will not alone serve as a sufficient basis for granting a disqualification motion. Rather, the motion will be granted only if the facts present a real risk that the trial will be tainted." *United States Football League v. National Football League,* 605 F.Supp. 1448, 1452 (S.D.N.Y.1985) (Leisure, J.).

The Code of Professional Responsibility (hereinafter the "Code"), as promulgated by the American Bar Association, has been adopted by the New York State Bar Association as its own code of ethics. *See* N.Y. Judiciary L. Appendix. Though not binding authority, *see Russo,* 1992 WL 196791 at *8, the Code has been recognized in this Circuit as prescribing appropriate guidelines for the professional conduct of the bar. *See NCK Org. Ltd. v. Bregman,* 542 F.2d 128, 129 n. 2 (2d Cir.1976). Moreover, under Local Rules 1.3 and 1.5, attorneys practicing in this Court must adhere to the Code as adopted by the Appellate Division of the New York State Supreme Court. The New York Court of Appeals has instructed that the Code is to be construed flexibly so as to provide "guidance for the courts in determining whether a case should be tainted by the participation of an attorney or a firm." *S & S Hotel Ventures,* 69 N.Y.2d at 444 n. 4, 515 N.Y.S.2d 735, 508 N.E.2d 647 (1987). The Code strongly disfavors motions to disqualify opposing counsel. *See, e.g., Paramount Communications, Inc. v. Donaghy,* 858 F.Supp. 391, 394 (S.D.N.Y.1994).

## B. Gianni Has Failed to Meet the Standard for Disqualifying Holzberg

■ Gianni argues that Holzberg should be disqualified pursuant to D.R. 5–102(a) and (b). *See* Gianni Mem. to Disqualify at 5. D.R. 5–102(a) provides, in pertinent part, that a lawyer shall not act as an advocate "if the lawyer knows or it is obvious that the lawyer ought to be called as a witness on behalf of the client ...." D.R. 5–102(a). Courts describe this standard as "whether the attorney's testimony could be significantly useful to his client." *See, e.g., Russo,* 1992 WL 196791 at *8 (citing *MacArthur v. Bank of New York,* 524 F.Supp. 1205, 1208 (S.D.N.Y.1981)). This provision, however, only applies where the attorney should be called by *his own* client. Here, Gianni's arguments in favor of disqualification assert that it would call Holzberg to testify. Since D.R. 5–102(a) only contemplates a situation where an attorney will be called by his own client, it is not applicable here, and

does not prohibit Holzberg from continuing as Alfredo's counsel.

According to D.R. 5–102(b), if a lawyer "learns or it is obvious that the lawyer . . . may be called as a witness other than on behalf of the client, the lawyer may continue the representation until it is apparent that the testimony is or may be prejudicial to the client," at which point the lawyer must withdraw. D.R. 5–102(b). Motions to disqualify pursuant to D.R. 5–102(b) are "subject to particularly strict scrutiny." *Riddell v. Brooks*, No. 92 Civ. 7851, 1994 WL 67836 at *5 (S.D.N.Y.1994) (Leisure, J.). In order to disqualify Holzberg, Gianni must demonstrate that Holzberg's testimony is necessary, and that the testimony is "substantially likely" to be prejudicial to Alfredo. *See Parke–Hayden, Inc. v. Loews Theatre Mgmt. Corp.*, 794 F.Supp. 525, 527 (S.D.N.Y.1992) (Sweet, J.). For testimony to be "prejudicial," it must be "sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the client might have an interest in the lawyer's independence in discrediting that testimony." *Paramount*, 858 F.Supp. at 395 (citing *Parke–Hayden, Inc.*, 794 F.Supp. at 527). A finding of necessity should take into account such factors as the significance of the matters, the weight of the testimony, and the availability of other evidence. *See S & S Hotel Ventures*, 69 N.Y.2d at 446, 515 N.Y.S.2d 735, 508 N.E.2d 647; *Parke–Hayden*, 794 F.Supp. at 527. Furthermore, testimony may be relevant and even highly useful, but still not strictly necessary. *See S & S Hotel Ventures*, 69 N.Y.2d at 446, 515 N.Y.S.2d 735, 508 N.E.2d 647.

Here, Gianni has failed to satisfy its burden of demonstrating that Holberg should be disqualified. First and foremost, even assuming that Holzberg's testimony would be prejudicial to Alfredo,

disqualification is not warranted at this juncture because Gianni fails to show that Holzberg's testimony is necessary. Holzberg's testimony would be necessary *only* if there were no other witnesses to the circumstances surrounding the writing of the letter. However, it is undisputed that both Alfredo and Law were present at the March 10, 2000 meeting when the letter was allegedly written and therefore, both Alfredo and Law could testify to those events at trial. Gianni contends that Alfredo is not a suitable alternative to testify at trial because the need for Holzberg's testimony arises from Alfredo's own failure to comply with repeated discovery orders. While this fact may indeed be true, it does not negate Alfredo's availability to testify about the circumstances of the March 10, 2000 meeting and Holzberg's letter at trial. Obviously, Gianni would be free to scrutinize Alfredo's credibility on cross-examination if and when Alfredo testified at trial. Moreover, although Gianni contends that Law is not available as a witness because she is a resident of Hong Kong and therefore not subject to the subpoena power of the court, Gianni has apparently made no efforts to secure her deposition or testimony. It is premature to disqualify an attorney under these circumstances. *See Abdullah v. Sheridan Square*, No. 93 Civ. 2515, 1995 WL 413171, at *1 (S.D.N.Y.1995) (Baer, J.) (denying disqualification when alternative witness was not subject to the jurisdiction of the court and attorney's testimony would likely not be adverse to the client). As Judge Baer noted in a similar situation, "[w]hen, as here, it is not clear, prior to the completion of discovery, whether the moving party sustained its burden of showing that the attorney would be called as a witness, the motion to disqualify counsel is premature and should be denied." Thus, because Holzberg's testimony appears to be merely cumulative at this stage of the proceedings, it cannot

serve as the basis for disqualification. *See Conigliaro v. Horace Mann School*, No. 95 Civ. 3555, 1997 WL 189058, at *3 (S.D.N.Y.1997) (Haight, J.); *Kubin*, 801 F.Supp. at 1113.

Finally, several courts in this district have permitted attorneys who were potential witnesses at trial to continue to represent their clients during pre-trial proceedings. *See, e.g., First Trust Int'l Assoc. v. Moses & Singer*, No. 99 Civ.1947, 2000 WL 1093054, at *6 (S.D.N.Y.2000) (Martin, J.); *Ragdoll Prod. (UK) Ltd. v. Wal–Mart Stores, Inc.*, No. 99 Civ. 2101, 1999 WL 760209, at *2 (S.D.N.Y.1999) (Cote, J.); *Rosefield v. Orentreich*, No. 98 Civ. 2721, 1998 WL 567750, at *5 (S.D.N.Y.1998) (Griesa, J.); *Conigliaro*, 1997 WL 189058 at *4. These courts have found that "[t]he concerns underlying DR 5–102(a) and (b) arise out of an attorney's presence at trial" and are therefore not implicated when the attorney represents the client prior to trial. *Conigliaro*, 1997 WL 189058, at *4. Furthermore, permitting pre-trial representation "protects the clients' right to choose their own counsel." *Id.* The Court finds this line of cases persuasive, and follows the great weight of authority in this District in refusing to disqualify Holzberg prior to trial. Gianni is free to seek the disqualification of Holzberg at the close of discovery if it believes the circumstances are such that Holzberg's testimony is then necessary and likely to be prejudicial to Alfredo.

Accordingly, Gianni's motion to disqualify Holzberg is denied at this stage of the proceedings.

## II. Motion to Amend Answer to Add Counterclaim

Alfredo's proposed counterclaim is untitled and fails to describe the precise nature of the cause of action it asserts against Gianni. *See* Proposed Amended Answer, ¶¶ 76–84. The counterclaim states, in pertinent part, that "Gianni has intentionally interfered with the business of [Alfredo] Versace .... to falsely and wilfully disrupt and disparage the credit and good name of Alfredo Versace." *Id.* ¶¶ 81–82. Alfredo himself has characterized the proposed counterclaim as one for "malicious interference with my business interests." Affidavit of Alfredo Versace, sworn to on March 9, 2001 (hereinafter "Alfredo Aff."), ¶ 3. Alfredo's affidavit further alleges that Gianni made untrue assertions in this litigation and "has aggressively sought to enjoin [Alfredo's] outstanding business operations throughout the world." *Id.* ¶ 5. Alfredo also claims that "long-standing distributors of my products ... have been directly intimidated by Gianni's operatives to cease doing business with me." *Id.* Specifically, he alleges that "the Foot Locker chain of stores and department stores," and Sumikan Bussan, a Far East distributor, have received intimidating letters from Gianni that threatened them if they continued doing business with Alfredo. Alfredo Aff. at ¶¶ 8–9. Alfredo's cause of action, therefore, appears to be one for tortious interference with contract under New York state law and the Court will analyze it as such.[5]

Gianni contends that Alfredo's motion is futile and therefore should be denied. Specifically, Gianni argues that Alfredo cannot establish that any contract was breached as a result of Gianni's actions and therefore, that this claim would be dismissed pursuant to Fed.R.Civ.P. 12(b)(6). Moreover, Gianni also contends

---

**5.** Gianni's opposition papers to Alfredo's motion also analyzed Alfredo's claim as one for tortious interference with contract. In his reply papers, however, Alfredo continues in his failure to specify whether this was indeed the cause of action he intended to assert.

that Alfredo's proposed counterclaim should be denied because it would delay the proceedings and cause undue prejudice to its case. According to Gianni, Alfredo's proposed counterclaim is merely an attempt to circumvent Magistrate Judge Katz's forthcoming sanctions order.

## A. Standard for Amendment of Pleadings

The decision to grant or deny a motion to amend a pleading is within the sound discretion of the district court. *See Foman v. Davis,* 371 U.S. 178, 181, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Evans v. Syracuse City Sch. Dist.,* 704 F.2d 44, 47 (2d Cir.1983). Alfredo's motion to amend his Answer to add a counterclaim is governed by Federal Rules of Civil Procedure 13(f) and 15(a). Rule 13(f) provides that "when a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment." Fed.R.Civ.P. 13(f). Rule 15(a) provides, in pertinent part:

A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served ... Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party.

Fed.R.Civ.P. 15(a). Because a responsive pleading was already served in this action, and Gianni has not consented to Alfredo's proposed amended Answer, Alfredo must obtain leave to amend from the Court. Rule 15(a) further provides that such leave to amend shall be "freely given when justice so requires." *Id.* However, the Court should deny leave when an amendment is offered in bad faith, would cause unduly delay or prejudice, or would be futile. *See Foman,* 371 U.S. at 182, 83 S.Ct. 227;

*Milanese v. Rust–Oleum Corp.,* 244 F.3d 104, 110 (2d Cir.2001). Indeed, it is well established that "[o]ne appropriate basis for denying leave to amend is that the proposed amendment would be futile because it fails to state a claim." *Nettis v. Levitt,* 241 F.3d 186, 193 (2d Cir.2001) (per curiam); *see also Hayden v. County of Nassau,* 180 F.3d 42, 53 (2d Cir.1999) ("[W]here the [moving party] is unable to demonstrate that he would be able to amend his [pleading] in a manner which would survive dismissal, opportunity to replead is rightfully denied."); *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993) (per curiam) ("Where it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend."); *Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991) (Kearse, J.) ("When [a party] has submitted a proposed amended [pleading], the district judge may review that pleading for adequacy and need not allow its filing if it does not state a claim upon which relief can be granted."); *Health–Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir.1990) ("[W]here, as here, there is no merit in the proposed amendments, leave to amend should be denied."). When considering whether a proposed amendment is "meritless" or "futile," the Court must conduct an inquiry comparable to the analysis governing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Milanese,* 244 F.3d at 110. Therefore, if the proposed claim would be subject to dismissal under Rule 12(b)(6), the Court should "refuse to grant leave to amend rather than assent and then await a motion to dismiss." *Bank of New York v. Sasson,* 786 F.Supp. 349, 352 (S.D.N.Y.1992).

Under the Rule 12(b)(6) standard, the Court must "accept the allegations contained in the [pleading] as true, and draw all reasonable inferences in favor of the

non-movant; it should not dismiss the [pleading] 'unless it appears beyond a reasonable doubt that the plaintiff can prove no set of fact in support of his claim which would entitle him to relief.'" *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "Nevertheless, the [pleading] must contain allegations concerning each of the material elements necessary to sustain recovery under a viable legal theory; it is not up to the Court to create a new legal theory to support the [pleading]." *Koehler v. Bank of Bermuda (New York) Ltd.,* No. 96 Civ. 7885, 1998 WL 557595 (S.D.N.Y.1998) (Keenan, J.), *aff'd,* 209 F.3d 130 (2d Cir. 2000). When determining the sufficiency of a claim under Rule 12(b)(6), the Court's consideration is limited to the factual allegations in the amended pleading, as well as "those contained in documents attached to the pleadings or in documents incorporated by reference." *Gregory v. Daly,* 243 F.3d 687, 691 (2d Cir.2001).

## B. Alfredo's Counterclaim Fails to State a Claim Upon Which Relief Can Be Granted

▉▉▉▉▉ To state a claim for tortious interference with contractual relations, a plaintiff must allege (1) the existence of a valid contract between itself and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional procuring of the contract's breach; and (4) damages. *See Foster v. Churchill,* 87 N.Y.2d 744, 749–50, 642 N.Y.S.2d 583, 665 N.E.2d 153 (1996). Here, Alfredo fails to satisfy these elements. Although the counterclaim itself fails to identify any specific contract between Alfredo and a third party, Alfredo's affidavit alleges that two of his distributors—Sumikin Bussan and Foot Locker—have ceased doing business with him as a result of Gianni's communications with them. *See* Alfredo Aff. ¶¶ 8–9. In order to substantiate his claim, Alfredo provided a letter from Fwa Saup Shin of Multisource International Incorporated, a New York corporation purporting to be "agents of Sumikin Busan [sic]."[6] In this letter, Shin claims that Sumikin Bussan "has chosen to Terminate the agreement" with Alfredo to produce and manufacture garments bearing Alfredo's trademarks until Alfredo's trademark disputes with Gianni have been resolved in Alfredo's favor. *See* Letter from Fwa Saup Shin, to Alfredo Versace, dated March 9, 2001, attached as Ex. 4 to Alfredo Aff.. However, Shin's letter fails to give an effective date for the termination of its relationship with Alfredo. *See id.* In addition, Alfredo also proffered a letter from Namd Di"Amici, President of J & H Corporation, an apparent distributor of Alfredo's products. Di'Amici's letter states that despite having negotiated a distribution agreement with Alfredo in 1999, "[it] could not take Alfredo Versace's words that we could do business with him under specific conditions" after being advised by Gianni of the preliminary injunction. *See* Letter from Namd Di'Amici, President of J & H Corp., to "Whom it May Concern," dated Feb. 12, 2001 (hereinafter "Di'Amici letter"), attached as Ex. 5 to Alfredo Aff..

However, these letters and Alfredo's allegations, without more, are insufficient to state a claim for tortious interference with contractual relations. Most significantly, Alfredo has failed to allege, as required, that any contract has been *breached* as a result of Gianni's actions. *See D'Andrea v. Rafla–Demetrious,* 146 F.3d 63, 65 (2d Cir.

---

**6.** Multisource International's name does not appear in the license agreement between Alfredo and Sumikin Bussan, nor in any other document produced by Alfredo to date. *See* Gianni Memorandum of Law in Opposition to Alfredo's Motion to Amend, at 7.

1998) (holding that a tortious interference cause of action requires an allegation of actual breach of contract). In a similar situation, Chief Judge Mukasey of this Court dismissed a plaintiff's claim for tortious interference with contract, finding that "the conspicuous absence of the word 'breach' from the complaint supports the inference that the contract was not, in fact, breached and that the vendor was exercising its right to terminate its credit agreement with [plaintiff]." *Marino v. Northwestern Mutual Life Ins.*, No. 00 Civ. 3212, 2001 WL 262574, at *3 (S.D.N.Y. 2001). Likewise, Alfredo's failure to allege that any of its contracts were actually breached is quite instructive. The Court will examine in turn the three examples of Gianni's alleged tortious conduct that Alfredo provides in his affidavit.

First, by its very terms, the contract between Sumikin Bussan and Alfredo ended on May 31, 2001. *See* Licensing Agreement between Versace Boutique, Ltd. and Sumikin Bussan, entered Dec. 1, 1997, attached as Ex. 12 to Jacoby Aff. In his affidavit, Alfredo concedes that he had hoped to extend his agreement with Sumikan Bussan after it ended, but Sumikan Bussan would not continue the relationship any further after learning of the preliminary injunction and Gianni's various enforcement actions against Alfredo. *See* Alfredo Aff. ¶ 8. Therefore, Alfredo does not allege that any contract with Sumikin Bussan was breached, but rather that the license was simply not extended after the contract expired.

Moreover, the letter from Namd Di'Amici of J & H Corporation likewise fails to support a claim for tortious interference with contract. First, on its face, the letter fails to specify any action J & H took—let alone the breach of a contract—in response to learning of the preliminary injunction in place against Alfredo. The let-ter simply remarks that J & H could no longer trust Alfredo's representations that he could license products bearing the "Designed By Alfredo Versace" label under certain circumstances. *See* Di'Amici letter. Second, even presuming that J & H terminated an agreement they had entered with Alfredo after learning of the preliminary injunction, Alfredo cannot state a claim for tortious interference against Gianni because the preliminary injunction itself requires Alfredo to provide a copy of the injunction to "all present and former licensees, franchisees, customers and distributors." Preliminary Injunction, dated Feb. 10, 1998, at ¶ 15. Di'Amici's letter suggests that Alfredo failed to abide by this provision of the injunction by indicating that J & H was totally unaware of the injunction before Gianni called it to its attention. In short, Alfredo appears to assert a claim against Gianni for notifying distributors of the existence of the preliminary injunction—a step the preliminary injunction expressly mandates that Alfredo himself take before entering into a contract to license his name. Therefore, Alfredo's claim that Gianni has wrongfully interfered with his contract rights by informing various distributors of the existence of the preliminary injunction is specious and untenable.

Finally, Alfredo's allegation that Foot Locker has stopped doing business with him as a result of Gianni's actions further demonstrates the lack of merit in Alfredo's counterclaim. As Alfredo has failed to provide any specifics regarding his allegation with respect to Foot Locker, the Court has attempted to glean Alfredo's argument from the voluminous record in this action. As discussed above, Foot Locker was a third-party defendant in the *A.V.* Action, whose receipt of a "cease and desist" letter from Gianni in 1996 led to

the commencement of that action by A.V.[7] In fact, A.V. sought an injunction from this Court to prohibit Gianni from sending further "cease and desist" letters to companies selling goods bearing Alfredo's marks. This Court refused to grant such injunctive relief to A.V., and permitted Gianni to continue the protection of its trademark rights by sending correspondence to companies who were allegedly infringing on those rights. *See A.V.*, 1997 WL 31247, at *2–3. Furthermore, shortly after Judge Stein entered the preliminary injunction, prior counsel for Alfredo, John F. Kaley, Esq., sent a cover letter and the preliminary injunction to 175 companies or entities who had agreements with Alfredo in accordance with the injunction. *See* Letter from John F. Kaley, Esq., to "Whom it May Concern," dated May 1, 1998, attached as Ex. 11 to Jacoby Aff. Kaley sent the cover letter and a copy of the injunction to, *inter alia,* Lady Foot Locker; Woolworth Corporation, then the parent of Foot Locker and Lady Foot Locker; and Savana Sportswear, the Italian affiliate of J & H Corporation. *See id.* Now, however, Alfredo apparently claims that, despite his former counsel having sent Foot Locker's parent corporation a copy of the preliminary injunction, Gianni has wrongfully interfered with his contractual relations with Foot Locker. This argument is frivolous to the extent of being absurd. In any event, Alfredo's claim against Gianni resulting from the 1996 letter to Foot Locker, and all other alleged tortious activity on Gianni's part prior to March 1998, is barred by the three-year statute of limitations for tortious interference with contractual relations under New York law. *See* New York Civil Practice Law and Rules, § 214; *Kronos, Inc. v. AVX Corp.,*

81 N.Y.2d 90, 92, 595 N.Y.S.2d 931, 612 N.E.2d 289 (1993).

Therefore, it is clear that Alfredo's proposed counterclaim could not withstand a motion to dismiss, and is therefore futile.

## C. Delay and Prejudice

■ Gianni also argues that leave to amend should be denied because Alfredo unreasonably delayed bringing the proposed claim. Gianni asserts that permitting Alfredo to add a counterclaim at this stage of the proceedings would cause undue delay and is merely an attempt to preempt the sanctions that Magistrate Judge Katz announced he would hand down.

District courts have discretion to deny leave " 'where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice other parties,' or where the belated motion would unduly delay the course of proceedings by, for example, introducing new issues for discovery." *Grace v. Rosenstock,* 228 F.3d 40, 53–54 (2d Cir.2000) (Kearse, J.) (citations omitted). The Second Circuit has observed that "the longer the period of an unexplained delay, the less will be required of the non-moving party in terms of a showing of prejudice." *Evans,* 704 F.2d at 47 (finding that the defendant had the burden to demonstrate "a compelling reason" for a delay of two years and nine months in raising a defense in its pleadings). In determining what constitutes "prejudice," courts "consider whether the assertion of the new claim would (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii)

---

7. All claims between Foot Locker and Gianni have been settled. *See* Stipulation and Order, dated July 26, 1999.

prevent the plaintiff from bringing a timely action in another jurisdiction." *Block v. First Blood Assoc.*, 988 F.2d 344, 350 (2d Cir.1993).

The Court finds that the factors of delay and prejudice strongly militate against permitting Alfredo to add the proposed counterclaim. First, Alfredo has not offered an explanation for why he waited over three years to bring this claim. Indeed, he concedes that its omission from his prior pleadings is "inexplicabl[e]." Alfredo Aff. ¶ 2. Second, by introducing a new issue for discovery, Alfredo would unduly delay the resolution of the ultimate issue of this case—whether he has infringed on the Gianni's trademarks and if so, the amount of damages to which Gianni is entitled. Furthermore, Gianni would be significantly prejudiced if, after Alfredo has steadfastly refused to comply with discovery requests despite three Court Orders requiring him to do so, discovery was prolonged in order to allow Alfredo to initiate discovery requests on Gianni. Therefore, the Court denies Alfredo's motion to amend because the proposed amendment would be both futile and unduly prejudicial to Gianni in light of the length of the delay and the development of the proceedings in discovery.

## CONCLUSION

For the foregoing reasons, Gianni's motion to disqualify Holzberg is HEREBY DENIED and Alfredo's motion to amend his Answer is HEREBY DENIED.

**SO ORDERED.**