Esther GANTHIER, Plaintiff,

v.

NORTH SHORE–LONG ISLAND JEW-
ISH HEALTHY SYSTEM, Greystone
Staffing, Inc., Susan Tobin, and Karen
Westerlind, Defendants.

No. 03–CV–0142 (ADS)(MLO).

United States District Court,
E.D. New York.

Jan. 12, 2004.

K.C. Okoli, Esq., New York City, for Plaintiff.

North Shore–Long Island Jewish Health System, Office of Legal Affairs by Jordy Rabinowitz, Esq., Great Neck, NY, for Defendants North Shore–Long Island Jewish Health System and Susan Tobin.

Jackson Lewis LLP by Miriam Lieberson, Esq., New York City, for Defendants Greystone Staffing, Inc. and Karen Westerlind.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The plaintiff, Esther Ganthier ("Ganthier" or the "plaintiff") commenced this action against the North Shore–Long Island Jewish Health System ("North Shore"), Susan Tobin ("Tobin"), GreyStone Staffing, Inc. ("GreyStone"), and Karen Westerlind ("Westerlind") (collectively, the "defendants") alleging discrimination on the basis of race and national origin, First Amendment retaliation, and conspiracy. Presently before the Court is a motion to dismiss the complaint by GreyStone and Westerlind (the "Moving Defendants") pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ.P") 8 and 12. Also before the Court is the plaintiff's cross-motion for leave to serve an amended complaint.

## I. BACKGROUND

### 1. Factual Background

The following facts are taken from the complaint which the Court takes to be true for the purpose of this motion. On or about August 21, 2001, Westerlind, a placement consultant employed by GreyStone, a temporary staffing firm, interviewed the plaintiff for a possible job opening. On or about September 4, 2001, Westerlind assigned the plaintiff to North Shore as a temporary medical biller where the plaintiff's responsibilities were to "post cash" for Franklin Hospital. Compl. ¶ 14. The plaintiff performed her duties in a "reasonably satisfactory and professional manner," Compl. ¶ 13, and after two weeks, the responsibility of cash posting for North Shore Hospital, was added to the plaintiff's job duties.

On or about October 24, 2001, Tobin, a supervisor at North Shore, indicated to the plaintiff that she had spoken to GreyStone and was informed that GreyStone had a new job for the plaintiff. However, the plaintiff told Tobin that she was unaware of any new employment opportunity and that she was not interested in changing jobs. Subsequently, Tobin indicated to the plaintiff that "she had spoken" with GreyStone and that the plaintiff was going to remain at North Shore. Compl. ¶ 17. On October 30, 2001, Tobin informed the plaintiff that effective November 5, 2001, the plaintiff would begin working as a data entry clerk, a position for which the plaintiff thought she was over qualified.

Upon Tobin's advice, the plaintiff phoned GreyStone to express her concerns about the upcoming change in her employment duties. Upon hearing about the plaintiff's transfer to the data entry position, the "plaintiff's consultant at GreyStone" allegedly told the plaintiff that "GreyStone did not send [the] plaintiff to North Shore to perform [a] data entry job." Compl. ¶ 20. After this incident, the plaintiff "left North Shore," Compl. ¶ 21, though it is unclear when or why she "left" or the circumstances surrounding her departure. The plaintiff further claims that Tobin mailed, rather than faxed, her time sheets to the payroll department, resulting in a six day delay of the plaintiff's receipt of her paycheck.

The plaintiff subsequently applied for and was denied unemployment benefits allegedly because the defendants "retaliated against her by passing on false information to the Department of Labor." Compl. ¶ 24.

### 2. Procedural Background

On or about December 4, 2001, the plaintiff filed a complaint of unlawful em-

ployment discrimination with the New York State Division of Human Rights ("NYSDHR") against the North Shore Long Island Jewish Home Health Care Network, (the "North Shore Network"), a division of North Shore. This charge was also accepted on behalf of the Equal Employment Opportunity Commission ("EEOC"). On October 8, 2002, the EEOC issued a Dismissal and Notice of Rights (the "right to sue letter") which was received by the plaintiff on October 12, 2002. The plaintiff timely commenced this action on January 9, 2003 alleging that she was discriminated against on the basis of her race and national origin in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("Section 1981") (race only), the New York State Human Rights Law, and the New York City Human Rights Law. The plaintiff also alleges that she was retaliated against because she exercised her First Amendment Rights and that the defendants conspired against her in violation of federal, New York State, and New York City laws. On March 10, 2003, the Moving Defendants filed their respective answers in response to the allegations in the plaintiff's complaint.

Presently before the Court is a motion to dismiss the complaint by GreyStone and Westerlind pursuant to Fed.R.Civ.P. 8 and 12. Also before the Court is the plaintiff's cross-motion for leave to serve an amended complaint.

## II. DISCUSSION

### A. The Standard

■ A motion brought to dismiss after an answer to the complaint has been served is properly designated as a motion for judgment on the pleadings pursuant to Rule 12(c). *Nat'l Assoc. of Pharm. Mfrs. v. Ayerst Labs.*, 850 F.2d 904, 909 (2d Cir.1988). The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion to dismiss the complaint for failure to state a claim upon which relief can be granted. *See Murray v. Connetquot Cent. Sch. Dist.*, 54 Fed.Appx. 18, 19 (2d Cir.2002). Therefore, the Court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Id.* The Court may dismiss the complaint only if " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Phelps v. Kapnolas*, 308 F.3d 180, 184 (2d Cir.2002) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

### B. The Federal Causes of Action

#### 1. Title VII

##### a. As to Westerlind

■ It is well-settled that "individuals are not subject to liability under Title VII." *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir.2000); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir.1995); *see also Copeland v. Rosen*, 38 F.Supp.2d 298, 302 (S.D.N.Y.1999) ("Individual employees may not be held personally liable under Title VII, even if they are supervisory personnel with the power to hire and fire other employees."). Accordingly, the Title VII claim against Westerlind is dismissed.

##### b. As to GreyStone

Individuals may bring Title VII claims in federal court only after filing a timely charge of employment discrimination with the EEOC and receiving a right-to-sue letter from the EEOC or an analogous state agency. 42 U.S.C. § 2000e–5(e); *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir.2001); *see*

*also* 42 U.S.C. § 2000e–5(f)(1) ("a civil action may be brought against the respondent *named* in the charge") (emphasis added). According to the complaint, the plaintiff filed an administrative complaint of unlawful employment discrimination with the New York State Division of Human Rights (the "NYSDHR") against the North Shore Network. This complaint was jointly filed with EEOC. However, GreyStone and Westerlind were not named as parties in the plaintiff's administrative complaint.

■ Generally, a district court lacks subject matter jurisdiction over a discrimination claim brought under Title VII against a defendant who has not been named in the charge filed with the EEOC. *Gagliardi v. Universal Outdoor Holdings, Inc.,* 137 F.Supp.2d 374, 379 (S.D.N.Y. 2001); U.S.C. § 2000e–5(f)(1). However, the Second Circuit takes "a flexible stance" and recognizes an exception to this general rule. *Brodie v. New York City Transit Authority,* No. 96 Civ. 6813, 1998 WL 599710, at * 6 (S.D.N.Y. Sept. 10, 1998) (citing *Johnson v. Palma,* 931 F.2d 203, 209 (2d Cir.1991)).

■ Under this "identity of interest" exception, courts will permit a Title VII action to proceed against an unnamed party where there is a "clear identity of interest between the unnamed defendant and the party named in the administrative charge." *Johnson,* 931 F.2d at 209. The factors that the Court must consider are to determine whether an "identity of interest" exists between the North Shore Network and GreyStone are: (1) whether the role of the unnamed party was known to the plaintiff at the time of filing the EEOC charge; (2) whether the interests of the named party are so similar to the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the un-

named party in the EEOC proceedings; (3) whether the unnamed party's absence from the EEOC proceedings resulted in actual prejudice to it; and (4) whether the unnamed party in some way represented to the complainant that its relationship to the complainant is to be through the named party. *Id.* Applying these factors to the facts of this case, the Court concludes that no such identity of interest exists between the North Shore Network and GreyStone. Accordingly, the motion to dismiss the Title VII claims against GreyStone is granted.

### 2. Section 1981

■ Section 1981 states that "[a]ll persons ... shall have the same right ... to make and enforce contracts...." In order to maintain a cause of action under this section, the plaintiff "must show both that he was subjected to intentional discrimination, and that this discrimination interfered with a contractual relationship." *Krulik v. Bd. of Educ.,* 781 F.2d 15, 23 (2d Cir.1986) (citations omitted). Thus, to establish a claim under Section 1981, the plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more activities enumerated in the statute. *See Mian v. Donaldson, Lufkin & Jenrette Securities Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993); *see also Reyes v. Bronx–Lebanon Hosp. Center,* No. 99 Civ. 4534, 2000 WL 377511, at *3 (S.D.N.Y. April 13, 2000). Furthermore, the conspiracy must also be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Mian,* 7 F.3d at 1087. The essential element of a Section 1981 claim is that the discrimination occurred as a result of the plaintiff's race. *See id.* at 1088.

■ Regardless of whether the plaintiff had a contractual employment relationship with either GreyStone or North Shore, *compare Simpson v. Vacco*, No. 96 Civ. 3916, 1998 WL 118155, at *7 (S.D.N.Y. 1998) (because the plaintiff did not enter into an employment contract, he was an at-will employee and precluded from stating a § 1981 claim) *with Harris v. New York Times*, 90 Civ. 5235, 1993 WL 42773, at *4 (S.D.N.Y.1993) (finding that rendition of services in exchange for the payment of wages is sufficiently contractual in nature to satisfy § 1981), the plaintiff fails to plead a Section 1981 cause of action because there is no allegation that there was any "intentional discrimination," *see Murray*, 844 F.2d, at 995 (2d Cir.1988), or that the plaintiff's race was even a factor in the change of her job duties. *But see e.g., Reyes*, 2000 WL 377511, at * 3 (The plaintiff's allegations that, among other things, that "non-Hispanic Caucasian employees similarly situated were paid higher salaries, and that this inequality [in salaries] was deliberate discriminatory treatment based upon her Hispanic ancestry and ethnicity" met the pleading requirements of Section 1981). In addition, the plaintiff does not even indicate why she "left" North Shore. *See* Compl. ¶ 21. Accordingly, the motion to dismiss the Section 1981 claim against the Moving Defendants is granted.

### 3. First Amendment Retaliation

The plaintiff claims that the defendants "retaliat[ed] against her by causing her to be denied unemployment benefits because she exercised her First Amendment Rights." Compl. ¶ 29. In particular, the plaintiff alleges that the "[d]efendants retaliated against her by passing on false information to the Department of Labor which caused [p]laintiff to be denied benefits because [p]laintiff has shown and/or expressed her displeasure with her reas-

signment from medical biller to a lower paying data entry clerk's position by Tobin." Compl. ¶ 24.

■ However, to state a claim under the First Amendment under 42 U.S.C. § 1983, the behavior complained of must be considered an action of the government, and not that of a private actor. *Henderson v. Center for Community Alternatives*, 911 F.Supp. 689, 707 (S.D.N.Y. 1996); *see also Myron v. Consolidated Rail Corp.*, 752 F.2d 50, 53 (2d Cir.1985). Because the First Amendment does not protect an employee from retaliation based on grievances which are private and not matters of public concern, the plaintiff's First Amendment retaliation claim must fail. *See Majer v. Metropolitan Transp. Auth., et al.*, No. 90 Civ. 4608 (S.D.N.Y. Dec. 14, 1990) (citing *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 1694, 75 L.Ed.2d 708 (1983)). Here, the plaintiff's speech was a private grievance relating to her personal desire not to be reassigned. *See O'Malley v. New York City Transit Auth.*, 829 F.Supp. 50, 53 (E.D.N.Y.1993) (retaliatory discharge lawsuit arising out of workers compensation claim does not involve public concern). Accordingly, the plaintiff's claims of First Amendment retaliation are dismissed.

### 4. Conspiracy

■ The plaintiff also alleges that the defendants conspired to violate the plaintiff's civil rights. A plaintiff may bring a claim for "injuries incurred due to conspiracies formed 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'" *Roffman v. City of New York*, No. 01 Civ. 8601, 2002 WL 31760245, at *5 (S.D.N.Y. Dec. 10, 2002) (citing 42 U.S.C. § 1985(3)); *see also Leon*

*v. Murphy,* 988 F.2d 303, 311 (2d Cir. 1993). To state a claim for conspiracy to interfere with civil rights, a plaintiff must allege the following: (1) a conspiracy; (2) for the purpose of depriving either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *Roffman,* 2002 WL 31760245, at *6 (citing *United Bhd. of Carpenters & Joiners v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983)). In addition, the plaintiff must allege motivation by some racial or other class-based "invidiously discriminatory animus behind the conspirator's action." *Roffman,* 2002 WL 31760245, at *6 (citations omitted). Finally, these elements must be alleged "with particularity." *Id.* (citing *Soto v. Schembri,* 960 F.Supp. 751, 760 (S.D.N.Y.1997) (citations omitted)).

The plaintiff fails to allege the elements of her conspiracy claim. *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997) (holding that a § 1985 conspiracy claim must state a factual basis as "a complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss" (internal citations and quotations omitted)). Here, the plaintiff fails to give the Moving Defendants any indication of what the alleged conspiracy is, the purpose of the conspiracy, who was involved in the conspiracy, the existence of an act in furtherance of the conspiracy, or that she was injured as a result of the conspiracy. *See Roffman,* 2002 WL 31760245, at * 6 (Dismissing the plaintiff's Section 1985 conspiracy claim for, among other things, her failure to allege "specific facts that could give rise to an inference of collusion or conspiracy be-

tween [the defendants]"). Accordingly, the plaintiff's claim for conspiracy under Section 1985 is dismissed.

## C. New York State and New York City Human Rights Law Claims

 Having dismissed all of the plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over the claims brought pursuant to New York State and New York City law with regard to the Moving Defendants. *See Arroyo v. City of New York, et al.,* No. 99 Civ. 1458, 2003 WL 22211500, at * 3 (Sept. 25, 2003) (citing *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).

## D. Ganthier's Cross Motion for Leave to Amend

 The plaintiff cross moves to amend her complaint in an attempt to sufficiently allege her claims. Leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Leave to amend should only be denied because of undue delay, bad faith, futility, or prejudice to the nonmoving party, *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), and the decision to grant or deny a motion to amend rests within the sound discretion of the district court. *Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995).

 If an amendment is futile, "it is not an abuse of discretion to deny leave to amend" to the moving party. *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993). A determination that a proposed claim is futile is made under the same standards that govern a motion to dismiss under Rule 12(b)(6). *See A.V. By Versace, Inc. v. Gianni Versace, S.p.A.,* 160 F.Supp.2d 657, 666 (S.D.N.Y.2001); *see also Randolph–Rand Corp. of New*

*York v. Tidy Handbags, Inc.,* No. 96 Civ. 1829, 2001 WL 1286989, at *5 (S.D.N.Y., Oct. 24, 2001) (An amendment is futile "if the proposed amended complaint would be subject to 'immediate dismissal' for failure to state a claim or on some other ground." (quoting *Jones v. New York Div. of Military & Naval Affairs,* 166 F.3d 45, 55 (2d Cir.1999))).

■ The plaintiff has attached a proposed amended complaint to her cross-motion. The only additional factual allegations set forth in the amended complaint are: that it was Westerlind who told the plaintiff that GreyStone did not send the plaintiff to NorthShore to perform data entry; the plaintiff had several years of medical billing experience prior to her employment at North Shore; that "upon information and belief" Tobin and Westerlind discussed placing "Louise," a white female, in the medical biller position and offering the plaintiff a lesser position which they believed the plaintiff would not accept; that the defendants retaliated against the plaintiffs by notifying the Department of Labor that she should be denied benefits because she failed to respond to a job offer for a medical billing position; and that Westerlind failed to return the plaintiff's telephone calls after the plaintiff was denied benefits.

In the Court's view, the amended complaint fails to cure the pleading deficiencies found in the complaint, thus rendering the granting of leave to amend "futile." *A.V. by Versace, Inc.,* 160 F.Supp.2d, at 666 First, neither of the Moving Defendants were named in the EEOC charge, which, subject to the limited exceptions, is a requirement to plead a Title VII cause of action. With respect to the Section 1981 cause of action, the proposed amended complaint does not allege that the Moving Defendants had a race based invidious discriminatory animus toward her. *See*

*Mian,* 7 F.3d at 1087. The proposed First Amendment retaliation claim would also fail as the plaintiff was not speaking about a matter of public concern. Finally, with respect to the federal conspiracy cause of action, the plaintiff fails to plead with particularity that the Moving Defendants were in fact in a conspiracy, or that they had a race based "invidiously discriminatory animus against the plaintiff." *Roffman,* 2002 WL 31760245, at *6.

Accordingly, the Court declines to grant the plaintiff leave to amend because her proposed amended complaint "would be subject to immediate dismissal for failure to state a claim or on some other ground." *Randolph–Rand Corp. of New York v. Tidy Handbags, Inc.,* 2001 WL 1286989, at *5 (internal quotation omitted).

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that the motion to dismiss all of the claims against the defendants GreyStone and Westerlind is **GRANTED**; and it is further

**ORDERED**, that the plaintiff's cross motion for leave to amend is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court is hereby directed to amend the caption to read as follows:

ESTHER GANTHIER,

Plaintiff,

-against-

NORTH SHORE LONG ISLAND JEWISH HEALTHY SYSTEM, and SUSAN TOBIN,

Defendants.

**SO ORDERED.**