OPINION OF THE COURT
 

 Smith, J.
 

 The issues presented by this appeal are (1) whether the Appellate Division erred in concluding that appellants had not established a claim of tortious interference and (2) whether the Appellate Division erred in affirming the dismissal of appellants’ defamation claim.
 

 Appellants Mark Foster and Don Franco are the founders and former chief executive officers of defendant Microband
 
 *747
 
 Companies Incorporated (Microband).
 
 *
 
 Microband, incorporated in Delaware, with offices in New York, Washington, D.C., and Detroit, was engaged in the wireless multichannel cable television business. Respondents, collectively referred to as the TA defendants, are a group of venture capital firms and their principals, Richard H. Churchill, Jr., and David D. Croll. Respondents Churchill and Croll were also directors of Micro-band. Though appellants founded Microband, at some point appellants sold Microband and in 1985 sought to repurchase the company. Respondents provided substantial financing for appellants’ repurchase of Microband, resulting in respondents’ owning a 75% equity interest in the company and appellants’ together owning the remaining 25%.
 

 In 1987, Microband was refinanced with a loan of approximately $25 million from defendants New York Life Insurance Company and New York Life Insurance and Annuity Corporation (the New York Life defendants). This loan resulted in the New York Life defendants obtaining nearly 13% of Microband’s outstanding stock. Microband was refinanced again in 1989, receiving funds from both the New York Life defendants and respondents TA defendants. At the time of the 1989 refinancing, appellants amended their employment agreements with Microband, extending their employment to 1992 and providing liberal severance packages should Microband terminate appellants prior to 1992 for reasons other than their death, disability, breach of the employment agreement or for cause. Termination for cause, however, was authorized and would result in appellants receiving no further payments (salary, bonuses or severance) under their employment contracts.
 

 Despite the injection of substantial cash, Microband’s rapid expansion and need to service existing debt necessitated additional capital. In January 1989, the New York Life defendants conditioned an additional $10 million in financing on Microband achieving 95,000 subscribers by August 1989. Microband was unable to meet this target and further was unable to independently raise the additionally needed funds.
 

 In the fall of 1989, Microband effectively ran out of cash. At a meeting of Microband’s board of directors, the decision was made to hire outside consultants to review the company’s business affairs. The consultants concluded that Microband was being mismanaged and was in serious financial trouble. The
 
 *748
 
 consultants’ report prompted Microband’s board of directors to develop a strategy to deal with the severe economic crisis facing Microband. A meeting of the board of directors of Micro-band was scheduled for November 10, 1989. Prior to the meeting, respondents Churchill and Croll circulated a "Schedule of Actions Constituting Cause” enumerating six grounds for terminating appellants "for cause.”
 

 In their schedule, respondents Churchill and Croll alleged that (1) appellants prevented the company from securing critical financing during the spring and summer of 1989 by failing to devote the necessary time and attention to the company’s operation because appellants were preoccupied with beneficially amending their employment contracts; (2) although appellants knew that Microband was in serious financial trouble, they failed to disclose the extent of the company’s dilemma to Microband’s financial backers; (3) appellants’ operations practices caused nonsubscribers to remain connected and in effect receive cable services at Microband’s expense; (4) appellants failed to use their best efforts on the company’s behalf; (5) appellants caused the company to incur legal fees which benefited appellants personally, and (6) appellants were grossly negligent and/or willful in their mismanagement of Microband. Appellants were notified, on November 10, 1989, of their termination "for cause” from Microband.
 

 Appellants commenced this action against respondents TA defendants asserting,
 
 inter alla,
 
 that respondents (i) prevented appellants from carrying out their proper functions as cochief executive officers of Microband; (ii) caused Microband to breach its employment agreements with appellants; (iii) defamed appellants to members of Microband’s board of directors, resulting in the wrongful termination of appellants’ employment; and (iv) breached their fiduciary duties. Appellants asserted a claim for breach of contract against Microband. Microband subsequently filed for bankruptcy protection and proceedings against it were stayed. Appellants also asserted claims against the New York Life defendants for breach of contract, and aiding in breach of fiduciary duty. The New York Life defendants settled their claims with appellants during the trial and are not involved in this appeal.
 

 Although initially noting that Microband could have fired appellants for no reason, Supreme Court, in a nonjury trial, held that by terminating appellants "for cause” and failing to pay them the required severance, Microband had breached its contracts with appellants. After the trial, the court dismissed
 
 *749
 
 all the claims against respondents TA defendants, despite finding that said respondents intentionally caused Microband to breach its contracts with appellants. Prior to dismissing the claims against the TA defendants, the court considered two defenses raised by respondents TA defendants, the business judgment rule and economic justification. Supreme Court concluded that the business judgment rule provided no protection to respondents because they failed to treat appellants with the utmost good faith required of them. As to the claim of tortious interference, the court concluded that respondents were protected by the defense of economic justification, finding that the predominate purpose of respondents’ actions was the economic interest of Microband.
 

 Finally, the court concluded that while many of the statements contained in the "Schedule of Actions Constituting Cause” were defamatory per se, such statements were "presumptively privileged because they concerned] the proper management of Microband and were published and discussed among persons responsible for its health.” The court examined each of the schedule’s statements and determined that none of the statements constituted grounds "for cause” within the appellants’ contracts. Moreover, the court found most statements were false, that the schedule was ambiguously worded, and while Microband’s problems were real, such problems went to "competence,” not to "cause.”
 

 The Appellate Division affirmed. Citing
 
 Felsen v Sol Cafe Mfg. Corp.
 
 (24 NY2d 682), it concluded that the respondents had established the defense of economic justification and had acted with no personal animus. In addition, the Court concluded that respondents had established the defense of business judgment since the case was governed by Delaware law in which the presumption existed that a director’s decision was made in good faith. This Court granted leave to appeal.
 

 Appellants appeal to this Court contending (1) that the Appellate Division erred by requiring them to establish a new standard of "personal animus” in order to defeat respondents’ defense of economic justification to a claim of tortious interference and (2) that the Appellate Division further erred by requiring appellants to prove "personal spite or ill will” to overcome the defense of qualified privilege to a claim of defamation.
 

 A claim of tortious interference requires proof of (1) the existence of a valid contract between plaintiff and a third
 
 *750
 
 party; (2) the defendant’s knowledge of that contract; (3) the defendant’s intentional procuring of the breach, and (4) damages
 
 (Israel v Wood Dolson Co.,
 
 1 NY2d 116, 120). These elements were established. We conclude, however, that the defense of economic justification was established by the respondents. Contrary to the argument of the appellants, the Appellate Division did not require appellants to establish personal animus to defeat the defense of economic justification. Thus the Appellate Division did not establish a new standard for claims of tortious interference but properly relied on this Court’s holding in
 
 Felsen v Sol Cafe Mfg. Corp.
 
 (24 NY2d 682,
 
 supra),
 
 that economic interest is a defense to an action for tortious interference with a contract unless there is a showing of malice or illegality.
 

 In
 
 Felsen v Sol Cafe Mfg. Corp. (supra),
 
 appellant Felsen was the treasurer, comptroller and general administrator of Sol Cafe, an instant coffee manufacturing plant. After Sol Cafe was ¡bought out by Chock Full O’Nuts, Felsen was terminated. Felsen sued Sol Cafe and its sole shareholder, Chock Full O’Nuts, for breach of his employment agreement and malicious inducement of that breach, respectively. Although the jury returned a verdict in favor of Felsen against both defendants, this Court held that the claim against Chock Full O’Nuts should have been dismissed because Chock Full O’Nuts, as the sole stockholder of Sol Cafe, had an economic interest to protect in the affairs of Sol Cafe. Such interest, it was noted, justified Chock Full O’Nuts’ interference with Felsen’s employment agreement with Sol Cafe, unless Chock Full O’Nuts was motivated by malice or employed illegal means to safeguard its interest.
 

 We concluded in
 
 Felsen
 
 that " '[procuring the breach of a contract in the exercise of equal or superior right is acting with just cause or excuse and is justification for what would otherwise be an actionable wrong’ ” (24 NY2d, at 687;
 
 see also, Murtha v Yonkers Child Care Assn.,
 
 45 NY2d 913, 915 [" 'a corporate officer who is charged with inducing the breach of a contract between the corporation and a third party is immune from liability if it appears that he is acting in good faith as an officer * * * (and did not commit) independent torts or predatory acts directed at another’ ”]).
 

 The imposition of liability in spite of a defense of economic interest requires a showing of either malice on the one hand, or fraudulent or illegal means on the other
 
 (Felsen v Sol Cafe Mfg. Corp.,
 
 24 NY2d, at 687). To defeat a claim of tortious
 
 *751
 
 interference under
 
 Felsen,
 
 respondents need to establish that their actions were taken to protect an economic interest. While the lower court found that respondents did not show good faith in their actions, and may have acted in bad faith, there was no evidence that independent torts were committed, nor were respondents’ actions advanced to serve some personal interest. Respondents were clearly acting in the economic interest of Microband, which was on the brink of insolvency. To the extent that respondents acted to preserve the financial health of an ailing Microband, their actions were economically justified.
 

 The trial court’s finding that respondents acted without good faith can be attributed to their motives for terminating appellants, namely to save Microband from paying out money it could not afford. The court did not find that respondents acted outside the scope of their duties as officers of Microband and, in that respect, they did not commit independent torts. While the absence of good faith motivated respondents’ actions, such actions were justified by economic considerations respecting Microband.
 

 Turning to appellants’ claim of defamation, that term is defined as the making of a false statement which tends to " 'expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society’ ”
 
 (Rinaldi v Holt, Rinehart & Winston,
 
 42 NY2d 369, 379, citing
 
 Sydney v Macfadden Newspaper Publ. Corp.,
 
 242 NY 208, 211-212). Even though a statement is defamatory, there exists a qualified privilege where the communication is made to persons who have some common interest in the subject matter
 
 (Liberman v Gelstein,
 
 80 NY2d 429, 437). The qualified privilege has been asserted in communications between members of a board of governors of a tenants’ association
 
 (Liberman v Gelstein, supra),
 
 between a college administrator and members of a tenure committee of a faculty
 
 (Stukuls v State of New York,
 
 42 NY2d 272) and between physicians belonging to a health insurance plan
 
 (Shapiro v Health Ins. Plan,
 
 7 NY2d 56, 60-61). "A privileged communication is one which, but for the occasion on which it is uttered, would be defamatory and actionable”
 
 (Park Knoll Assocs. v Schmidt,
 
 59 NY2d 205, 208). We find the statements made by respondents Churchill and Croll in the "Schedule of Actions Constituting Cause,” although per se defamatory, were protected under the conditional or qualified privilege.
 

 The defense of qualified privilege will be defeated by demonstrating a defendant spoke with malice ("The shield provided
 
 *752
 
 by a qualified privilege may be dissolved if plaintiff can demonstrate that defendant spoke with 'malice' "
 
 [Liberman, supra,
 
 at 437;
 
 see also, Park Knoll Assocs. v Schmidt,
 
 59 NY2d, at 209,
 
 supra]).
 
 Moreover, the conditional or qualified privilege is inapplicable where the motivation for making such statements was spite or ill will (common-law malice) or where the " 'statements [were] made with [a] high degree of awareness of their probable falsity' " (constitutional malice)
 
 (Liberman,
 
 80 NY2d, at 438).
 

 Appellants have failed to establish that respondents acted out of personal spite or ill will, with reckless disregard for the statements’ truth or falsity, or with a high degree of belief that their statements were probably false. In the "Schedule of Actions Constituting Cause”, respondents essentially claimed, based on the critical financial condition of Microband, that appellants mismanaged Microband and that such mismanagement resulted in Microband not being profitable. While respondents seemingly made these statements without actual knowledge of their truthfulness, respondents apparently presumed that the statements were not wholly false. "[T]here is a critical difference between not knowing whether something is true and being highly aware that it is probably false”
 
 (Liberman v Gelstein,
 
 80 NY2d 429, 438,
 
 supra).
 
 Because respondents, as members of Microband’s board of directors, shared a common interest, protecting and preserving the financial health and security of Microband, their otherwise actionable defamatory statements were not actionable because they were conditionally privileged. As we indicated in
 
 Liberman,
 
 "The rationale for applying the privilege in these circumstances is that so long as the privilege is not abused, the flow of information between persons sharing a common interest should not be impeded”
 
 (Liberman,
 
 at 437).
 

 Moreover, a finding that respondents acted without good faith is not inconsistent with our determination that they similarly acted without malice. The trial court made a factual finding that respondents’ statements were not made with an intent to harm appellants or with a reckless disregard for their truth, nor did appellants establish that such statements were made solely because respondents disliked appellants. A finding that respondents acted without good faith, although their actions were economically justified and not improper, is not inconsistent with a finding of the absence of malice, common law or constitutional.
 

 Finally, in view of our disposition here, we find it unnecessary to consider the Delaware business judgment rule.
 

 
 *753
 
 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Levine and Ciparick concur.
 

 Order affirmed, with costs.
 

 *
 

 Appellants served as cochief executive officers of Microband and its predecessors from 1971 until November 10, 1989.