**Joseph D. JENKINS, Jr., Plaintiff,**

**v.**

**Kathleen TYLER, individually and as Assistant Commissioner of the City of New York, Human Resources Administration, and the Social Concern Vendor Agency Defendant.**

**No. 00 CIV. 8980(VM).**

United States District Court,
S.D. New York.

Oct. 18, 2001.

Irene Donna Thomas, New York, NY, for Joseph D. Jenkins, Jr.

Stephen E. Zweig, Benetar, Bernstein, Schair & Stein, New York, NY, for The Social Concern Vendor Agency, Inc.

### DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Joseph Jenkins ("Jenkins") brought this action against defendant Kathleen Tyler ("Tyler") alleging deprivation of his First Amendment rights in violation of 42 U.S.C. § 1983, as well as tortious interference with a contract. Tyler served as Assistant Commissioner of New York's Human Resources Administration ("HRA") and the conduct that gave rise to Jenkins's claims arose from actions Tyler took in exercising official duties of her office. Jenkins also named the Social Concern Vendor Agency ("SCVA") as an additional defendant, against which Jenkins asserts claims of violations of the Fair Labor Standards Act, 29 U.S.C. § 213, tortious interference with contract and intentional infliction of emotional distress. Tyler moved under Fed.R.Civ.P. 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief could be granted and on the ground that Tyler is unqualifiedly and absolutely immune from liability. SCVA has not moved against the complaint. For the reasons described below, the motion is granted, and the complaint is dismissed with respect to Tyler.

## I. FACTUAL BACKGROUND

During the period relevant to this dispute, the relationship between SCVA and the HRA was governed by an agreement ("the Agreement") which provided the following:

A.  Contractor [SCVA] represents and warrants that neither it nor any of its directors, officers, members, partners or employees has any interest nor shall they acquire any interest directly or indirectly which would or may conflict in any manner or degree with the performance or rendering of the services herein provided. The contractor [SCVA] further represents and warrants that in the performance of the Agreement no person having such interest shall be employed by it.

\*      \*      \*      \*      \*      \*

C.  The contractor's [SCVA's] employees and members of their Immediate Families may not serve on:

1.  The board of directors of the contractor; or

2. Any committee with authority to order personnel action affecting his or her job, or which, either by rule or by practice, regularly nominates, recommends or screens candidates for employment in the program.

D. No person may hold a job or position over which a member of his immediate family exercises any supervisory, managerial, or other authority whatsoever whether such authority is reflected in a job title or otherwise.

Agreement at 4.

Through early March 2000, both Joseph Jenkins and his mother, Cynthia Jenkins, were members of the board of directors of the SCVA (the "SCVA Board"). In addition, Mrs. Jenkins was a member of the board of directors of the Social Concern Committee of Springfield Gardens, Inc. (the "SCC"), the parent organization of the SCVA. She was also a member of the New York State Assembly representing the district where SCVA was located and provided services.

In March 2000, the SCVA Board, having found administrative and financial difficulties in the management of SCVA, dismissed the Director of the Organization and began its search for a new one. On March 2, 2000, the SCVA Board identified Mr. Jenkins as a candidate for Interim Director, until a new director could be found. That day, Mrs. Jenkins orally resigned from the SCVA Board, submitting a written resignation the following day. Jenkins was voted Interim Director by the SCVA's Board on March 3, 2000. He did not participate in the vote and resigned from SCVA Board that day in order to accept the new position.

Tyler was informed, by letter, of Jenkins's appointment on March 3, 2000. During a visit by Jenkins to the HRA offices on March 17, 2000, Tyler informed him that he could not serve as SCVA Interim Director. In the following

months, SCVA received additional letters from HRA asserting that Jenkins's appointment presented a "conflict of interest" in violation of the Agreement. Tyler, herself, informed the SCVA Board, by mail on July 17, 2000, that Jenkins's employment as Interim Director represented a conflict of interest given the influence of his mother over his selection and appointment, and given her continued influence over SCVA as a result of her role as a member of the board of the parent organization.

On August 2, 2000, SCVA informed Jenkins that his employment was to be terminated as of September 15, 2000, as Tyler had determined that his employment presented a conflict of interest. Jenkins left the position of Interim Director on September 15, 2000.

## II. DISCUSSION

Under Fed.R.Civ.P. 12(b)(6), a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." In addition, when deciding a motion under Rule 12(b)(6), a court must assume the truth of all well-pleaded assertions of facts contained in the complaint. Jenkins asserts a claim against Tyler under 42 U.S.C. § 1983, alleging that Tyler violated his First Amendment right to freedom of association, and a claim under state law for tortious interference with a contract.

### A. FREEDOM OF ASSOCIATION

■ The Supreme Court has recognized two types of association protected by the First Amendment: expressive association and intimate association. *See Roberts v. Unites States Jaycees,* 468 U.S. 609, 617–18, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). The right of intimate association guarantees an individual the choice of entering an

intimate relationship free from undue intrusion by the state, and extends to family relationships. *See id.* at 619, 104 S.Ct. 3244 (citing *Zablocki v. Redhail,* 434 U.S. 374, 383–386, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978), *Smith v. Organization of Foster Families,* 431 U.S. 816, 844, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977), *Carey v. Population Services International,* 431 U.S. 678, 684–686, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977) and *Moore v. East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977)). The right to intimate association is not absolute, however. Here, Jenkins has failed to plead facts indicating how Tyler interfered with his mother-son relationship, and thus violated this right.

In *Adler v. Pataki,* 185 F.3d 35 (2d Cir.1999), a case relied on by Jenkins in opposition to Tyler's motion, the plaintiff alleged that he was fired in response to a lawsuit filed by his wife against his employer. The Second Circuit found this to be "undue state interference" with the "intimate marital relationship." *Id.* at 44.

The holding in *Adler* does not support Jenkins's theory. There, the Second Circuit asserted that the "activity of Adler's wife in suing state officials for herself and another plaintiff ... could not reasonably be found to justify his discharge," and a "relationship as important as marriage cannot be penalized for something as insubstantial as a public employer's discomfort about a discrimination lawsuit brought by an employee's spouse." *Adler* at 44. In other words, it was the lack of any nexus between Adler's wife's actions and Adler's own ability to perform his duties that justified finding a First Amendment violation. In the case at bar, however, Tyler insisted on having Jenkins removed from the position of Interim Director specifically because of the connection between Mrs. Jenkins's action, as a member of the board of directors of the SCVA's parent organization and a former member of the

board of directors which appointed Jenkins, and Jenkins's inability to perform his duties without the appearance of impropriety. There is no indication here that the intent or effect of Tyler's action was to "penalize" his mother-son relationship for any reason not legitimately connected with Tyler's official duties in overseeing proper compliance with the relevant provisions of the Agreement.

The line of cases, cited by Jenkins, which have found First Amendment violations where a plaintiff was the victim of "guilt by association" are similarly inapposite. In *Tyson v. New York City Housing Authority,* 369 F.Supp. 513, 518 (S.D.N.Y. 1974), the plaintiffs were found ineligible to continue occupying their home due to the actions of their children who were not even residing there. The court found that "the defendants acted 'solely from the fact of association' by the plaintiffs with their children." Here, Tyler's action was not taken solely from the fact of Jenkins's association with his mother, but out of concern over the influence that Mrs. Jenkins could have over him, as she enjoyed a position of power in the parent organization of the corporation being run by her son, and over the appearance of impropriety the situation created in the administration of a not-for-profit organization operating programs on behalf of the City and financed by public funds. Under these circumstances, this Court finds no violation of Jenkins's First Amendment right to freedom of association based on Tyler's action.

■ Even were there substantial grounds to sustain Jenkins's claims of a First Amendment violation here, Tyler would nevertheless be immune from liability under the doctrine of qualified immunity. In accordance with this doctrine, government officials are shielded from liability flowing from their performance of discre-

tionary functions as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 819, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Supreme Court has noted that "there is a strong public interest in protecting public officials from the costs associated with the defense of damages actions." *Crawford–El v. Britton,* 523 U.S. 574, 590, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). "That interest is best served by a defense that permits insubstantial lawsuits to be quickly terminated." In other words, qualified immunity grants a government official "immunity from suit rather than a mere defense to liability ... [i]t is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

There are three issues that could serve as grounds to sustain a defendant's qualified immunity defense: (1) whether it was clear at the time of the defendant's acts that federal law or the federal constitution protected the interests asserted by plaintiff; (2) whether, if the interest exists, it was clear that an exception did not permit the defendant's acts; and (3) whether it was objectively reasonable for the defendant to believe that he was not violating the plaintiff's rights. *Robison v. Via,* 821 F.2d 913, 920–21 (2d Cir.1987). Here, the relevant inquiry entails only the first prong.

In *Adler,* the Second Circuit noted that "[t]he nature and extent of [the right of intimate association] is hardly clear." *Adler,* 185 F.3d at 42. The court went on to note that there have been variations in the "doctrinal analyses" of such claims, the source of the right, and the standard applied. *See id.* Accordingly, this Court concludes that it was not clear at the time of Tyler's actions that federal law or the federal Constitution protected the relation-

ship interests Jenkins asserts, and thus that Tyler's actions would violate the contours of the First Amendment right to freedom of intimate association. On this basis, the Court concludes that Tyler is qualifiedly immune from liability under this claim.

## B. *TORTIOUS INTERFERENCE WITH CONTRACT*

Jenkins asserts a claim against Tyler for tortious interference with a contract, specifically alleging that Tyler and other HRA officials acted with tortious intent to remove Jenkins from his position as Interim Director of SCVA.

Under New York law, "[W]hen official action involves the exercise of discretion or expert judgment in policy matters, and is not exclusively ministerial, a municipal defendant generally is not answerable in damages for the injurious consequences of that action." *Haddock v. City of New York,* 75 N.Y.2d 478, 554 N.Y.S.2d 439, 553 N.E.2d 987, 991 (1990) (citing *Tango v. Tulevech,* 61 N.Y.2d 34, 471 N.Y.S.2d 73, 459 N.E.2d 182, 185–86 (1983), *Arteaga v. State,* 72 N.Y.2d 212, 532 N.Y.S.2d 57, 527 N.E.2d 1194, 1196 (1988) and *Weiss v. Fote,* 7 N.Y.2d 579, 200 N.Y.S.2d 409, 167 N.E.2d 63 (1960)). An official act is discretionary if it "entailed the exercise of some judgment and discretion." *Mon v. City of New York,* 78 N.Y.2d 309, 314, 574 N.Y.S.2d 529, 579 N.E.2d 689. Clearly, interpreting and enforcing the terms of the Agreement, which was a government-funded contract for the operation of public services, required some level of judgment and discretion on the part of the Assistant Commissioner of the City agency administering the relevant program. By virtue of the duties of her office, Tyler was required to both interpret and apply the conflict of interest provision of the Agreement, and also to decide

whether the positions Jenkins and his mother held in SCVA and its parent entity respectively violated that provision. In light of this necessarily fact-intensive analysis of a legal issue, and especially given its potential for legal, political and public relations repercussions, the Court finds that there was room for, and Tyler's actions represent, the exercise of discretion and reasoned judgment.

 In addition, under New York law, "[p]rocuring the breach of contract in the exercise of equal or superior right is acting with just cause or excuse," and is a defense to an action for tortious interference with contract. *Foster v. Churchill,* 87 N.Y.2d 744, 642 N.Y.S.2d 583, 665 N.E.2d 153, 157 (1996); *Felsen v. Sol Cafe Manufacturing Corp.,* 24 N.Y.2d 682, 301 N.Y.S.2d 610, 249 N.E.2d 459, 461 (1969). The imposition of liability in spite of such a defense requires a showing of malice or illegal means. *See Foster,* 642 N.Y.S.2d 583, 665 N.E.2d at 157. Tyler's claims of right here were that Jenkins's employment violated the conflict of interest provision of the Agreement and that such employment was against the public interest in that it gave the appearance of impropriety. As such, Tyler's claim of right is equal, if not superior, to Jenkins's claim and provides Tyler with an additional defense against Jenkins's suit. Finally, as Jenkins did not allege malice or illegal conduct by Tyler, and on the record before it this Court could not reasonably sustain such a charge, Tyler's defense is complete.

### III. *CONCLUSION AND ORDER*

For the foregoing reasons, it is hereby

**ORDERED** that defendant Tyler's motion for summary judgment is GRANTED; and it is further

**ORDERED** that the remaining parties, plaintiff Jenkins and defendant Social Concern Vendor Agency, attend a status conference with the Court, at 40 Centre Street, Courtroom 618, on Friday, October 26, 2001, at 9 a.m.

**SO ORDERED.**