**DON KING PRODUCTIONS, INC.,**
Plaintiff–Appellant,

v.

James Andre SMITH a/k/a James Andre Prince, Rap–A–Lot Records Inc., Prince Town Management, LLC and Prince Boxing Enterprises, Ltd., Defendants–Appellees.

Docket No. 01–9311.

United States Court of Appeals, Second Circuit.

Sept. 12, 2002.

Peter Fleming, Jr., Michael Quinn, of counsel, Curtis, Mallet–Prevost, Colt & Mosle, LLP, New York, NY, for Plaintiff–Appellant.

Jethro M. Eisenstein, Profetta & Eisenstein, New York, NY, for Defendants–Appellees.

Present CALABRESI, B.D. PARKER, Jr., Circuit Judges, and COTE, District Judge.[*]

### SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court be and it hereby is AFFIRMED.

Plaintiff–Appellant Don King Productions ("DKP") appeals the judgement entered in the United States District Court for the Southern District of New York (Pollack, J.) following a jury verdict in favor of Defendant James Andre Smith, a/k/a James Andre Prince ("Prince"). The jury rejected DKP's claim that Prince had tortiously interfered with two contracts between DKP and James Page, a welterweight boxer.

In December 1997, Page entered into a four-year, exclusive agreement with DKP, a corporation that promotes professional boxing events. At the same time, Page entered into a managerial contract with Carl King, Don King's stepson.[1] In October 1998, Page became the recognized Welterweight World Champion of the World Boxing Association ("WBA"). He defended that title in December 1998, March 1999, and July 1999.

In the spring of 1999, Page began to be courted by Prince, a record producer and boxing manager in Houston, Texas. Prince and his employee, Thomas Summers, told Page and his mother that Page was underpaid by Don King, and that Page would be better off with Prince representing him. In January 2000, Page went to Houston to see Prince. In the spring of 2000, James Page fired Carl King and Pamela Page as his managers. Page says he did so because Carl King was unable to negotiate with his stepfather to get Page larger purses. Page then entered into a relationship with Prince.[2]

In November 2000, Page sued the WBA, DKP, and Carl King's management company. Page asserted that the WBA had ordered him to fight without adequate time to train, that this constituted arbitrary and capricious action offending fundamental fairness, and that DKP had breached its promotional contract with him by, inter alia, failing to notify him of the rescheduled date of a bout that Page was scheduled for. DKP countersued Page for breach of the promotional and bout agreements.

The WBA soon settled with Page. But in January 2001, during the pendency of its litigation with Page, DKP sued Prince (and his various businesses), claiming that Prince had tortiously induced Page to breach his promotional and bout agreements with DKP. In April 2001, Page and DKP agreed to a stipulation dismissing their claims and counterclaims against one another with prejudice. When negotiating that stipulation, DKP expressly reserved

---

[*] The Honorable Denise Cote, United States District Court for the Southern District of New York, sitting by designation.

[1] Pamela Page, James Page's mother, became Page's co-manager soon thereafter.

[2] The parties dispute whether this relationship was as a "manager," "consultant," or "advisor," and whether it was formed pursuant to a written contract.

its rights with respect to its suit against Prince.

That case went to a jury and, after a four-day trial in October 2001, the jury returned a verdict in favor of Prince.

On appeal, DKP objects to comments made by the judge in the presence of the jury, and to some of the judge's instructions to the jury. Specifically, DKP claims (1) that the judge improperly advised the jury that, because DKP had agreed to a dismissal of its breach of contract claims against Page, DKP forfeited its right to argue that the contracts between it and Page had been breached, (2) that the court's instructions to the jury on the affirmative defense of justification to a claim of tortious interference were erroneous, and (3) that the court should not have allowed Prince to assert the justification defense because, in the absence of a written executed agreement between Page and Prince, Price had no economic interest in Page's affairs.

## I.

■ On the first morning of trial, with the venire present but before jury selection, the district court discussed some preliminary matters with counsel. Before doing so, the court admonished the jury panel that the matters at hand "are not to be considered as any evidence in the case whatsoever," and that the jurors were "not expected to remember anything about this for the purposes of this trial or to apply any part of it for the purposes of the trial." With that preface, the court and the attorneys proceeded to talk about several issues. In these discussions, the court raised the question of whether—given the stipulation dismissing DKP's breach of contract claims against Page—

DKP was able to assert that Page breached his contracts (such a breach being a necessary element to any tortious interference claim). The attorneys presented their conflicting views on this point and, despite the court's continuing inclination to believe that the stipulation had res judicata effect, the court allowed the proceedings to continue. The jury was then selected and the trial began. DKP contends that this preliminary statement by the court, as well as the court's summary of the case at the beginning of its charge and two comments it made in the jury charge, improperly required the jury to conclude that the bout agreement had not been breached.

A trial judge may assist the jury by explaining and commenting on the evidence, provided that the judge makes clear that matters of fact are submitted to the jury for its final determination. *United States v. Helmsley,* 941 F.2d 71, 89 n. 8 (2d Cir.1991) (citing *Quercia v. United States,* 289 U.S. 466, 469–70, 53 S.Ct. 698, 77 L.Ed. 1321 (1933)). *But this "privilege of the judge to comment on the facts has its inherent limitations. His discretion is not arbitrary and uncontrolled, but judicial, to be exercised in conformity with the standards governing the judicial office." Quercia,* 289 U.S. at 470, 53 S.Ct. 698.

The district court's reference to the stipulation dismissing with prejudice DKP's claims against Page, especially when viewed in light of the instructions as a whole, were not prejudicial to DKP. The court did not, as DKP asserts, advise the jury that Page had not breached the contract. Rather, it noted plainly that DKP's claims against Page were dismissed, but that DKP's suit against Prince continued.[3]

---

**3.** DKP's lengthy argument on the merits of the legal question the judge raised with respect to the stipulation, i.e., whether the stip-

ulation should operate as res judicata on DKP's claims against Prince, is irrelevant, because the court did submit the case to the

Moreover, the court expressly charged that jury that it should determine for itself whether the contracts were breached.

## II.

■ DKP claims that the judge erred in instructing the jury that Prince could make out the affirmative defense of justification by showing that he was acting to protect the economic interest of Page alone, *or of Prince alone,* or of both. DKP maintains, instead, that the justification defense is allowed only when the defendant acts to serve and protect *the breaching party's* (i.e., Page's) economic interest.

A jury charge is erroneous if the instruction misled the jury as to the proper legal standard or did not adequately inform the jury of the law. *Hester v. BIC Corp.,* 225 F.3d 178, 186 (2d Cir.2000). Challenged jury instructions are reviewed de novo, but we will reverse only if all of the instructions, taken as a whole, caused the defendant prejudice. *Id.*

Tortious interference with contract requires (1) the existence of a valid contract, (2) the defendant's knowledge of that contract, (3) the defendant's intentional procuring of the breach, and (4) damages. *Foster v. Churchill,* 87 N.Y.2d 744, 642 N.Y.S.2d 583, 665 N.E.2d 153, 156 (N.Y. 1996). But the interference must be intentional, not merely negligent or incidental to some other, lawful, purpose. *Alvord and Swift v. Stewart M. Muller Constr. Co.,* 46 N.Y.2d 276, 413 N.Y.S.2d 309, 385 N.E.2d 1238, 1241 (N.Y.1978). And the New York Court of Appeals has stated that "economic interest is a defense to an action for tortious interference with a contract unless there is a showing of malice or

illegality." *Foster,* 642 N.Y.S.2d 583, 665 N.E.2d at 156.

Such economic interest, DKP's arguments to the contrary notwithstanding, is not limited to that of the breaching party, but can include that of the alleged interferers as well. *See, e.g., Felsen v. Sol Café Mfg. Corp.,* 24 N.Y.2d 682, 301 N.Y.S.2d 610, 249 N.E.2d 459 (N.Y.1969). Felsen was employed under contract by Sol Café, which was purchased by Chock Full O'Nuts, and Felsen was then fired. He sued Chock Full O'Nuts for tortious interference, and the jury returned a verdict in his favor. The Court of Appeals reversed, reasoning that

> Chock Full O'Nuts, as the sole stockholder of Sol Café, had an existing economic interest to protect and was, therefore, privileged to interfere with the contract between plaintiff and Sol Café and plaintiff could not, therefore, recover on this cause of action unless he established that the means chosen to protect that interest were illegal or that Chock Full O'Nuts, through its officers or agents, was motivated by malice toward plaintiff rather than by the preservation of *its own economic interest* in Sol Café (emphasis added). *Id.* at 461.

In other words, the court did not say that, to sustain a justification defense, Chock Full O'Nuts had to be acting in the economic interest *of the breaching party:* it was sufficient that Chock Full O'Nuts was acting in to protect *its own economic interest* in that breaching party.[4]

DKP cites lower-court decisions in which corporate officers—acting in their own economic interest—were held liable when

---

jury and did not grant Defendant's motion for summary judgment based on the stipulation.

**4.** DKP argues that this reasoning only applies where the defendant has an ownership inter-

est in the breaching party. But there is nothing in the opinion, or in any other cases cited to us, that suggests such a limitation.

they induced the corporation to breach a contract. *See, e.g., Hoag v. Chancellor, Inc.,* 245 A.D.2d 1129, 667 N.Y.S.2d 531, 534 (N.Y.App.Div.1997); *Remy Beverages, Inc. v. Myer,* 56 N.Y.S.2d 828, 830 (Sup.Ct. Bronx Co.1945). In each of these cases, however, there was also substantial evidence that the defendant was acting either out of malice toward the plaintiff, or that its actions violated its duty of good faith or fiduciary obligations to the breaching party. Such circumstances (of malice, bad faith, breach of fiduciary duty, etc.), of course, go to the third step of the tortious interference analysis, i.e., whether—once the plaintiff proves the elements of the tort and the defendant responds with a defense of economic justification—the plaintiff has overcome that justification by showing that the defendant's purported interest was nonetheless improper, illegal, or malicious.

DKP contends that Prince's actions bespoke a similar impropriety, because an agent is "prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties." *Sokoloff v. Harriman Estates Devel. Corp.,* 96 N.Y.2d 409, 729 N.Y.S.2d 425, 754 N.E.2d 184, 189 (N.Y.2001). In furthering Prince's own economic interests, DKP seems to be saying, Prince was breaching his fiduciary duties to Page. But as the court correctly instructed the jury, the burden of overcoming the justification defense by showing malice or other improprieties is squarely on the plaintiff, and the jury verdict entails that DKP did not meet its burden.

### III.

Finally, DKP claims that Prince lacked standing to assert the justification defense, because Prince was unable to prove that he was Page's manager at the time the contracts were breached. DKP alleges that any management or consulting agreement between Page and Prince was oral and not written, and that, because oral agreements between managers and boxers are illegal under the laws of Texas (and New York, California, and Nevada), the illegal agreement cannot support an affirmative defense that Prince was justified in inducing the breach to protect the economic interest he had in Page's affairs. In other words, DKP asserts that, because there was no executed written agreement between Prince and Page when the breach occurred, Prince could not have any legal economic interest to protect, and thus the economic justification defense is unavailable to him.

Assuming arguendo that, in order for the economic justification to be made out, the alleged interferer must have an existing and legally valid economic interest in the breacher at the time the interference occurs, DKP's contention still fails. Both Page and Prince testified that they did execute a written consulting agreement in February 2000. Prince further testified that he could not produce the document because his employee, Thomas Summers, took it when Prince fired him. On that evidence, the jury could have concluded that the contract did exist.

We have considered all of Plaintiff's other claims and find them meritless. We therefore AFFIRM the judgment of the district court.