WHITE PLAINS COAT & APRON
CO., INC., Appellant,

v.

CINTAS CORP. and Cintas Corp.
2, Defendants–Appellees.

Docket No. 05–1520–CV.

United States Court of Appeals,
Second Circuit.

Argued: Jan. 30, 2006.

Decided: Aug. 15, 2006.

Lee H. Rubin, Mayer, Brown, Rowe & Maw LLP; Palo Alto, CA, for Appellant White Plains Coat & Apron Co., Inc.

Steven J. Rice, Harris Beach LLP, New York, NY, Steven C. Coffaro, Keating Muehing & Klekamp PLL, Cincinnati, OH (on the brief), for Appellees Cintas Corp. and Cintas Corp. No. 2.

Before WINTER, CABRANES, and B.D. PARKER, Circuit Judges.

B.D. PARKER, Jr., Circuit Judge.

We find that the resolution of this case, which involves a claim of tortious interference with an existing contract, turns on a question of New York law that is undecided: whether a generalized economic interest in soliciting business for profit can constitute a defense to a claim of tortious interference with an existing contract for an alleged tortfeasor with no previous economic relationship with the breaching party. We therefore certify this question to the New York Court of Appeals.

## I. BACKGROUND

Except as noted, the facts are undisputed. White Plains Coat & Apron Co., Inc. ("WPL"), based in Peekskill, New York, rents napkins, tablecloths, and other laundered articles to bars, restaurants, and other businesses. WPL executes signed contracts with the majority of its customers. In these form contracts, a WPL customer typically "agrees to rent from [WPL] exclusively during the term of [the] Agreement, all of Customer's requirements for laundered articles." Generally, in exchange for a five-year exclusive contract, WPL commits (either in writing or orally) to provide customers with services on a daily, weekly or monthly basis.

Cintas Corp. and Cintas Corp. 2 (collectively "Cintas") are based in Ohio and have local offices throughout the United States. Cintas primarily rents articles such as uniforms, linens, and mats and provides items such as hand soaps and paper towels. WPL claims that Cintas intentionally induced dozens of WPL customers to breach

their agreements with WPL and enter into rental agreements with Cintas.

Specifically, WPL contends that Cintas trained its sales representatives "to convince WPL's customers to abandon prematurely their binding, enforceable agreements with WPL." WPL further claims that "Cintas induced dozens of WPL customers to breach their agreement[s] with WPL and enter into rental agreements with Cintas ... [It] signed up WPL customers even though customers informed Cintas that they had valid agreements with WPL." Shortly after WPL discovered what Cintas purportedly had done, it wrote Cintas demanding that it "cease [its] practice of soliciting customers with whom we have contractual agreements and immediately discontinue servicing those of our customers to whom you are delivering laundered items in violation of our exclusive agreements." The letter included a list of customers whom Cintas had allegedly improperly solicited.

In response, Cintas visited many of the customers identified in the letter and inquired whether its representatives had induced them to breach contractual commitments with WPL. Cintas then requested that the customers initial and date a written certification (previously included in the Cintas agreements) which stated that Cintas had not infringed existing contracts with any other rental service provider. Some, but not all, of the customers WPL had listed complied with the request.

WPL then sued Cintas for tortious interference with existing customer contracts and on other claims not relevant to this appeal. At the close of discovery, Cintas moved for summary judgment, arguing that it had no knowledge of the agreements with WPL and that it had not induced any breaches. The United States District Court for the Southern District of New York (Charles L. Brieant, *Judge*)

granted Cintas's summary judgment motion. In the court's oral decision, it reasoned that, assuming Cintas had interfered with its competitor's contractual relationships, it had "a legitimate economic interest as a competitor to go sell or rent the linens." Thus the district court determined that the economic interest defense was triggered, and to defeat it, WPL was required to show, but did not show, malice or illegality.

■ Under this defense, where a third party has an "economic interest" in an entity and interferes with an existing contractual relationship between the plaintiff and that entity, such interference is considered privileged and the plaintiff must show malice or illegality in order to establish a tortious interference claim. *See Foster v. Churchill*, 87 N.Y.2d 744, 750–751, 642 N.Y.S.2d 583, 665 N.E.2d 153 (1996) ("procuring the breach of a contract in the exercise of equal or superior right is acting with just cause or excuse and is justification for what would otherwise be an actionable wrong." (internal quotations omitted)). *See also Felsen v. Sol Café Mfg. Corp.*, 24 N.Y.2d 682, 687, 301 N.Y.S.2d 610, 249 N.E.2d 459 (1969) (stating that defendant was "privileged to attempt to protect" its "existing economic interest ... when it 'interfered' with plaintiff's contract of employment.").

WPL then filed a motion for reconsideration arguing that the economic interest defense did not apply because Cintas had no existing economic relationship with any of its customers and that Cintas's interest was, at best, only a general economic interest that did not support a defense to the tort. The district court denied WPL's motion, finding that the tortious interference defense is not limited to defendants with an "ownership interest in the breaching party." This appeal followed.

## II. DISCUSSION

■ As a preliminary matter, although it is undisputed that jurisdiction is predicated on diversity of citizenship, the parties disagree as to which state's laws apply. *See Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin. Inc.*, 414 F.3d 325, 331 (2d Cir.2005). WPL (a New York corporation) contends that New York law applies because the contracts at issue contained New York choice of law provisions. On the other hand, Cintas (a Washington corporation with its principal place of business in Ohio) contends we must apply the substantive law of the respective states where each of the customers involved is located (New York, New Jersey, and Connecticut) because each state has an interest in the resolution of the case. Since diversity exists, we apply the choice of law rules of the forum state. *See Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir.2001).

Here, a choice of law analysis is necessary because the elements of tortious interference with contract in the relevant states differ. New Jersey and Connecticut require proof that the defendant acted maliciously, while New York only requires proof of malice if the economic interest defense has been triggered. *See Daley v. Aetna Life & Cas. Co.*, 249 Conn. 766, 734 A.2d 112, 135 (1999) (requiring "proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation ... or that the defendant acted maliciously" and explaining that "[a]n action for intentional interference with business relations ... requires the plaintiff to plead and prove at least some improper motive or improper means ...."); *DiGiorgio Corp. v. Mendez & Co.*, 230 F.Supp.2d 552, 565 (D.N.J.2002) ("a plaintiff must also prove that the intentional interference was done with malice.").

■ New York courts have adopted a flexible choice of law approach and "seek to apply the law of the jurisdiction with the most significant interest in, or relationship to, the dispute." *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1539 (2d Cir.1997). *See Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 72, 595 N.Y.S.2d 919, 612 N.E.2d 277 (1993); *Babcock v. Jackson*, 12 N.Y.2d 473, 481–82, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963). As we have said, " 'the relevant analytical approach to choice of law in tort actions' is the 'interest analysis' ... 'the law of the jurisdiction having the greatest interest in the litigation will be applied.' " *Lazard Freres & Co.*, 108 F.3d at 1539 n. 5 (quoting *Schultz v. Boy Scouts*, 65 N.Y.2d 189, 197, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985)). "If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *Cooney*, 81 N.Y.2d at 72, 595 N.Y.S.2d 919, 612 N.E.2d 277.

Here, twenty-eight of the thirty-five customers involved are located in New York and are served by one of two Cintas offices in New York. Four customers are located in, and serviced from, Connecticut; and three are located in, and serviced from, New Jersey. The contracts that were allegedly interfered with were governed by New York law. But more importantly, because the alleged tort substantially occurred in New York, where the vast majority of the customers are located, and because the vast majority of the alleged harm occurred in New York (as WPL is a New York company headquartered in New York), we conclude that New York has the greatest interest in regulating the conduct in question and that the district court was correct to apply New York law. *See Cur-*

ley v. AMR Corp., 153 F.3d 5, 12 (2d Cir.1998).

While the "New York Court of Appeals has held that 'there is no reason why all issues arising out of a tort claim must be resolved by reference to the law of the same jurisdiction,'" *Lazard Freres & Co.*, 108 F.3d at 1540 (quoting *Babcock*, 12 N.Y.2d at 484, 240 N.Y.S.2d 743, 191 N.E.2d 279), that court has also held that where negligent conduct occurs in one jurisdiction but the plaintiff's injuries are suffered in another, the situs of the tort is where the last event necessary for liability occurred. *Schultz*, 65 N.Y.2d at 195, 197, 491 N.Y.S.2d 90, 480 N.E.2d 679. Thus, here, where not only the vast majority of the conduct supporting the claim occurred in New York, but also the damages were suffered at WPL's New York headquarters, New York has the most significant interest and its laws apply. *See Curley*, 153 F.3d at 12; *Schultz*, 65 N.Y.2d at 197, 491 N.Y.S.2d 90, 480 N.E.2d 679.

■■ "Where an [ ]unsettled and significant question of state law ... will control the outcome of [the] case, ... we may certify that question to the New York Court of Appeals." *Krohn v. N.Y. City Police Dep't*, 341 F.3d 177, 180 (2d Cir. 2003) (quoting *Baker v. Health Mgmt. Sys.*, 264 F.3d 144, 153 (2d Cir.2001) (citing 2d Cir. R. § 0.27; N.Y. Comp.Codes R. & Regs. tit. 22, § 500.17 (2000)). Certification is proper when, as here, we are confronted with a dispositive "complex question of New York common law for which no New York authority can be found." *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 51 (2d Cir.1992).

■ In determining whether to certify we consider "the absence of authoritative state court interpretations, ... the importance of the issue to the state and the likelihood that the question will recur, and the capacity of certification to resolve the litigation." *Green v. Montgomery*, 219 F.3d 52, 60 (2d Cir.2000). Additionally, we carefully assess whether the question implicates issues of state public policy. *See Home Ins. Co. v. Am. Home Prods. Corp.*, 873 F.2d 520, 522 (2d Cir.1989).

## A. Tortious Interference Under New York Law

■ Tortious interference with an existing contract is a commonly pled tort. The New York Court of Appeals reviewed the tort's basic elements in *Israel v. Wood Dolson Co.*, 1 N.Y.2d 116, 120, 151 N.Y.S.2d 1, 134 N.E.2d 97 (1956) and the tort was later explained as follows: "when there is knowledge of a contract, and a competitor takes an active part in persuading a party to the contract to breach it by offering better terms or other incentives, there is an unjustifiable interference with the contract." *State Enter., Inc. v. Southridge Coop. Section 1, Inc.*, 18 A.D.2d 226, 227–28, 238 N.Y.S.2d 724 (N.Y.App.Div. 1963). To establish tortious interference, a plaintiff must show "(1) the existence of a valid contract between plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional procuring of the breach, and (4) damages." *Foster*, 87 N.Y.2d at 749–50, 642 N.Y.S.2d 583, 665 N.E.2d 153; *see also Israel*, 1 N.Y.2d at 120, 151 N.Y.S.2d 1, 134 N.E.2d 97.

As the New York Court of Appeals has noted, the contours of the tort under New York law are uncertain. *See Guard–Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 189, 428 N.Y.S.2d 628, 406 N.E.2d 445 (1980) ("With respect to the tort of interference with contract relations, it has been aptly said that the law in this area has not fully congealed but is still in a formative stage ... [J]urisdictions, and even courts within a single jurisdiction, have taken different views with respect to

liability for interference with contract performance.") (internal quotations omitted). Today, while the law has evolved, it remains murky in certain respects as discussed in this proposed certification.

■ The New York Court of Appeals carved out an important defense to the tort—the economic interest defense: "[P]rocuring the breach of a contract in the exercise of equal or superior right is acting with just cause or excuse and is justification for what would otherwise be an actionable wrong.'" *Foster*, 87 N.Y.2d at 750, 642 N.Y.S.2d 583, 665 N.E.2d 153 (quoting *Felsen*, 24 N.Y.2d at 687, 301 N.Y.S.2d 610, 249 N.E.2d 459). It is clear that under New York law, "[t]he imposition of liability in spite of a defense of economic interest requires a showing of either malice on the one hand, or fraudulent or illegal means on the other." *Id. See also Felsen*, 24 N.Y.2d at 687, 301 N.Y.S.2d 610, 249 N.E.2d 459. However, what constitutes the "equal or superior right" to trigger the economic interest defense in the first place has never been clarified by the New York Court of Appeals.

Consequently, courts have applied the defense in an inconsistent manner. At one end of the spectrum, it is clear that a concrete, pre-existing economic interest such as a high level of stock ownership will support a defense to the tort. *See Foster*, 87 N.Y.2d at 751, 642 N.Y.S.2d 583, 665 N.E.2d 153 (applying the economic interest defense where defendants owned 25% of the company at issue); *Felsen*, 24 N.Y.2d at 686, 301 N.Y.S.2d 610, 249 N.E.2d 459 (applying the economic interest defense where defendant was the sole stockholder in the relevant company and therefore had an "existing economic interest."). However, precisely what constitutes a sufficient economic interest for the purposes of relying on the defense has not been established.

■ Whether a general business interest in luring customers from a competitor is sufficient to trigger the economic interest defense is an important, recurring issue that potentially touches a wide range of commercial behavior. The tort protects contracts from interference, but also has the potential to restrain business competition if applied too loosely. In addition, it is unclear how the law applies to contracts that are terminable at will, terminable on some notice, or terminable only when stipulated conditions may have been met. The issue is dispositive in this case, and, we believe the answer is not clear from New York's case law.

The district courts have embraced varying interpretations of this tort under New York law. One court has ruled that the defense simply means, "at most, that a corporate parent is privileged to interfere with the contractual relationships of its subsidiaries." *Conocophillips v. 261 E. Merrick Rd. Corp.*, 428 F.Supp.2d 111, 123 (E.D.N.Y.2006). Another has interpreted the defense quite broadly. In *Record Club of America, Inc. v. United Artists Records, Inc.*, 611 F.Supp. 211, 217 (S.D.N.Y.1985), the court held that under "New York law, one who has a *financial* interest in the business of another is privileged to interfere with a contract between the other and a third party *if* his purpose is to protect his own interests and if he does not employ improper means." (first emphasis added). We believe it more appropriate for the New York Court of Appeals to resolve these conflicting interpretations of New York law than for us to attempt to do so.

As we have noted, while the elements of the tort and the consequences of triggering the economic interest defense are relatively clear, the type of economic interest

required to trigger it is not. We cannot determine from New York case law whether the district court was correct when it held that a "general economic interest of a company to solicit business and make a profit" was sufficient to trigger the defense.

As stated above, New York cases have made clear that a concrete, preexisting interest such as an existing equity interest is sufficient. In 1948, a New York court stated that "[o]ne who has a financial interest in the business of another possesses a privilege to interfere with the contract between the other and someone else if his purpose is to protect his own interests and if he does not employ improper means (§ 769, Restatement of Law of Torts)." *Morrison v. Frank,* 81 N.Y.S.2d 743, 744 (N.Y. Sup.Ct. N.Y. County 1948). Twenty-one years later, in *Felsen,* the New York Court of Appeals cited *Morrison* as an example of "sparse" but "persuasive" authority in support of the defendant's economic interest argument. *Felsen,* 24 N.Y.2d at 687, 301 N.Y.S.2d 610, 249 N.E.2d 459. The Court of Appeals pointed to *Morrison* as "one of the few instances in which a court has precisely identified a particular 'interest,' the protection of which may provide the basis for the 'just cause or excuse' in the face of which plaintiff's cause of action for malicious inducement of a breach of contract will fail." *Id.* The court elaborated and explained that "[s]tated more generally, '[p]rocuring the breach of a contract in the exercise of equal or superior right is acting with just cause or excuse and is justification for what would otherwise be an actionable wrong.'" *Id.* (internal citations omitted)(quoting *Knapp v. Penfield,* 143 Misc. 132, 134–35, 256 N.Y.S. 41 (N.Y.Supp. 1932).

Some cases illustrate conduct that might supply the justification. For example, in *Foster,* the defendants held a majority equity interest in the company and the court found that they "were clearly acting in the economic interest of [the company], which was on the brink of insolvency. To the extent that [defendants] acted to preserve the financial health of an ailing [company], their actions were economically justified." 87 N.Y.2d at 751, 642 N.Y.S.2d 583, 665 N.E.2d 153. In *Felsen,* the court explained that the defendant, "as the sole stockholder of [the company involved], had an existing economic interest in the affairs of [the company] which it was privileged to attempt to protect when it 'interfered' with plaintiff's contract of employment with [the company]." 24 N.Y.2d at 687, 301 N.Y.S.2d 610, 249 N.E.2d 459. On the other hand, *Carvel Corp. v. Noonan,* 3 N.Y.3d 182, 785 N.Y.S.2d 359, 818 N.E.2d 1100 (2004), involved franchises and answered a certified question from this court regarding interference with *prospective* economic relations. None of these precedents apply the defense based on a *general* economic interest and, more importantly, none supply sufficiently useful general principles.

The district court assumed *arguendo,* for the purpose of considering defendant's motion for summary judgment, that plaintiff presented sufficient evidence to prove the required elements of the tort. *See* Trial Tr. at 13. *See also Foster,* 87 N.Y.2d at 750, 642 N.Y.S.2d 583, 665 N.E.2d 153 (requiring proof of (1) a "valid contract" (2) "defendant's knowledge of that contract," (3) "intentional procuring of the breach," and (4) "damages"). The court then found, in effect, that even assuming the existence of these elements, summary judgment was appropriate because plaintiff had not presented evidence to overcome the economic interest defense. Trial Tr. at 13–17. Indeed, plaintiff presented no evidence of malice or illegality and specifically admit-

ted to the district court that no evidence of bribery was available.

## B. Plaintiff's Claims on Appeal

The district court found that Cintas's interest to "solicit business and make profit" constituted the requisite interest to trigger the defense. The court reasoned that the plaintiff's claim for tortious interference necessarily failed because "the defendant had a legitimate economic interest as a competitor to go sell or rent the linens." The court stated that "the only answer that a competitor has is to go out and do it also to the other guy." The district court concluded that it did not "believe that the defense is available only to those defendants in tortious interference cases whose economic interest is limited to an ownership interest in the breaching party."[1]

WPL contends that the district court erroneously construed New York law as providing that interference with a contract may be justified where (a) the interference was motivated by a "general economic interest of a company to solicit business and make a profit," and (b) plaintiff has not demonstrated that these acts of interference involved malice or other unlawful conduct. WPL contends that the "existing economic interest" defense under New York law is a narrow one that applies only when a "defendant has some pre-existing economic relationship with the breaching party"—a circumstance not present in this case. Br. of Pl.-Appellant at 9. WPL argues that the rule fashioned by the district court "would work a fundamental change in the law of New York by eviscerating the well-established distinction between the

tort of interfering with existing contracts on the one hand, and interfering with prospective contract rights." *Id.* at 10 (emphasis added).

Where, as here, an important legal issue remains unsettled as a matter of state law, certification is appropriate. *See Green*, 219 F.3d at 60. The district court's reasoning was—due to the scarcity of precedent—not particularly grounded in New York law. In addition, the court's analysis addresses issues that implicate competing and wide-ranging policy considerations. *See Home Ins. Co.*, 873 F.2d at 522 ("[W]e carefully assess whether the question implicates issues of state public policy."). On the one hand, WPL indisputably had valid contracts with its customers. On the other hand, Cintas's behavior—attempting to convince customers to purchase a superior service-arguably resembled garden-variety robust competition. The district court's legitimate concerns about the anti-competitive implications of a broad interpretation of the tort raise questions that are likely to "recur" repeatedly under New York law, *see Riordan*, 977 F.2d at 51. Because we believe that fashioning an appropriate balance between the protection of contracts and the protection of competition in New York is a task best left to the Court of Appeals, we certify.

## CONCLUSION

Pursuant to Second Circuit Local Rule § 0.27 and New York Court of Appeals Rule § 500.17, we certify the question below to the New York Court of Appeals which may, of course, reformulate or expand upon this question as it wishes.

---

1. The district court relied for authority on a summary order of this Court, *see Don King Prods., Inc. v. Smith*, 47 Fed.Appx. 12, 15 (2d Cir.2002) (stating that "it was sufficient that [a defendant] was acting to protect its own economic interest in that breaching party"), which should not have been cited as precedential authority. Local Rules § 0.23 (2d Cir.).

It is hereby ORDERED that the Clerk of the Court transmit to the Clerk of the New York Court of Appeals a Certificate in the form attached, together with a copy of this opinion and a complete set of the briefs, appendices, and record filed by the parties in this Court. This panel will retain jurisdiction to decide the case once we have had the benefit of the views of the New York Court of Appeals, or if that court declines certification. Finally, we order the parties to bear equally any fees and costs that may be requested by the New York Court of Appeals.

## CERTIFICATE

The following question is hereby certified to the New York Court of Appeals pursuant to Second Circuit Local Rule § 0.27 and 22 N.Y. C.R.R. § 500.17, as ordered by the Court of Appeals of the Second Circuit:

Does a generalized economic interest in soliciting business for profit constitute a defense to a claim of tortious interference with an existing contract for an alleged tortfeasor with no previous economic relationship with the breaching party?