14-4022-cv
Reed Constr. Data Inc. v. McGraw-Hill Cos.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of January, two thousand sixteen.

PRESENT:  RALPH K. WINTER,
          REENA RAGGI,
          CHRISTOPHER F. DRONEY,
                    *Circuit Judges*.

-----------------------------------------------------------------------
REED CONSTRUCTION DATA INC.,
                    *Plaintiff-Appellant*,


          v.                                          No. 14-4022-cv


McGRAW-HILL COMPANIES, INC.,
                    *Defendant-Appellee*.
-----------------------------------------------------------------------


APPEARING FOR APPELLANT:     WILLIAM N. WITHROW, JR. (James A. Lamberth and Kevin G. Meeks, *on the brief*), Troutman Sanders LLP, Atlanta, Georgia.


APPEARING FOR APPELLEE:     SAUL B. SHAPIRO (Joshua A. Goldberg and Michelle W. Cohen, *on the brief*), Patterson Belknap Webb & Tyler LLP, New York, New York.


1

Appeal from judgment of the United States District Court for the Southern District of New York (J. Paul Oetken, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on October 21, 2014, is AFFIRMED.

Plaintiff Reed Construction Data, Inc. ("Reed") appeals from the award of summary judgment to defendant McGraw-Hill Companies, Inc. ("McGraw-Hill") on Reed's claims under the Lanham Act, 60 Stat. 427, Pub. L. No. 79-489, codified at 15 U.S.C. §§ 1051 et seq., the Sherman Antitrust Act, 26 Stat. 209, codified at 15 U.S.C. §§ 1–7, and state law in connection with a McGraw-Hill advertising campaign making allegedly false or misleading comparisons between the quantity of construction project data offered by Reed and by McGraw Hill. "We review an award of summary judgment de novo, construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in his favor." McElwee v. County of Orange, 700 F.3d 635, 640 (2d Cir. 2012). We assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm for largely the reasons stated in the district court's thorough and well-reasoned opinion.

1.    Lanham Act

Section 43(a) of the Lanham Act provides a cause of action against "[a]ny person who . . . uses in commerce any . . . false or misleading description . . . or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the

2

nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1). Reed can recover under § 43(a) under either of two theories:

> First, the plaintiff can demonstrate that the challenged advertisement is literally false, i.e., false on its face. When an advertisement is shown to be literally or facially false, consumer deception is presumed, and the court may grant relief without reference to the advertisement's actual impact on the buying public. This is because plaintiffs alleging a literal falsehood are claiming that a statement, on its face, conflicts with reality, a claim that is best supported by comparing the statement itself with the reality it purports to describe.

> Alternatively, a plaintiff can show that the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers. Plaintiffs alleging an implied falsehood are claiming that a statement, whatever its literal truth, has left an impression on the listener or viewer that conflicts with reality—a claim that invites a comparison of the impression, rather than the statement, with the truth. Therefore, whereas plaintiffs seeking to establish a literal falsehood must generally show the substance of what is conveyed, a district court must rely on extrinsic evidence of consumer deception or confusion to support a finding of an implicitly false message.

Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 153 (2d Cir. 2007) (brackets, citations, ellipsis, footnote, and internal quotation marks omitted). "Under either theory, the plaintiff must also demonstrate that the false or misleading representation involved an inherent or material quality of the product." Id. at 153 n.3. This inquiry is "essentially one of materiality, a term explicitly used in other circuits." National Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 855 (2d Cir. 1997) (collecting cases analyzing effect on customers' buying decisions).

3

The district court found certain of McGraw-Hill's statements to be arguably literally false, and certain others only to be arguably misleading.  See Reed Constr. Data Inc. v. McGraw-Hill Cos., 49 F. Supp. 3d 385, 412–15 (S.D.N.Y. 2014).  Yet the district court found that none of the statements, individually or in the aggregate, was material.  See id. at 417–19.  We agree.  Discovery revealed only one customer who arguably relied upon McGraw-Hill's advertising in deciding between Reed and McGraw-Hill, while numerous other customers testified that they discounted the companies' representations as to their own products and conducted independent evaluations.  Although McGraw-Hill's internal correspondence among its marketing professionals professed great enthusiasm for the advertising campaign at issue, the evidence from consumers makes clear that the market of sophisticated consumers relying largely on face-to-face sales was unmoved.  Cf. 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 27:35 (4th ed. rev. 2015) ("Where an expensive product is sold by personal contacts, misleading claims in a sales brochure may not have a tendency to deceive or influence purchasing decisions and hence not be a violation of § 43(a).").  Given the overwhelming testimonial evidence from customers, no reasonable jury could have concluded that any false or misleading statements were material to customers' purchasing decisions.  Reed's Lanham Act claim therefore fails.[1]

_____

[1] Because the district court excluded the report of Reed's expert, Dr. Warren-Boulton, only on the issue of damages, we need not reach Reed's challenge to that decision because the

4

2.    Sherman Act

Reed's failure to establish materiality with regard to its Lanham Act claim a fortiori

defeats its Sherman Act claim. "[A] plaintiff asserting a monopolization claim based on

misleading advertising must 'overcome a presumption that the effect on competition of

such a practice was de minimis.'"  National Ass'n of Pharma. Mfrs. v. Ayerst Labs., 850

F.2d 904, 916 (2d Cir. 1988) (quoting Berkey Photo, Inc. v. Eastman Kodak Co., 603 F.2d

263, 288 n.41 (2d Cir. 1979)).

> [A] plaintiff may overcome the de minimis presumption "by cumulative proof that the representations were (1) clearly false, (2) clearly material, (3) clearly likely to induce reasonable reliance, (4) made to buyers without knowledge of the subject matter, (5) continued for prolonged periods, and (6) not readily susceptible of neutralization or other offset by rivals."

Id. (quoting 3 Phillip E. Areeda & Donald F. Turner, Antitrust Law ¶ 738(a), at 279

(1978)).  Because McGraw-Hill's statements were insufficiently material to influence

customer decisions, they cannot support Reed's monopolization claims.

3.    Tortious Interference with Prospective Economic Advantage

Insofar as Reed sued under state law for tortious interference with prospective

economic advantage, the district court noted a choice-of-law question between New York,

where McGraw-Hill is domiciled, and Georgia, where Reed is domiciled.  See Reed

Constr. Data Inc. v. McGraw-Hill Cos., 49 F. Supp. 3d at 425 n.20, 427.  Reed conceded

---

materiality defect in Reed's Lanham Act and Sherman Act claims causes them to fail in
any event.

that if Georgia law applied, its tortious interference claim would be preempted by the Georgia Trade Secrets Act, Ga. Code Ann. §§ 10-1-760 et seq. See Reed Constr. Data Inc. v. McGraw-Hill Cos., 49 F. Supp. 3d at 427; App'x 480. The district court did not decide the choice of law question, concluding instead that Reed's tort claim failed at the causation element. We are free, however to affirm a district court decision on any grounds supported by the record. See Gmurzynska v. Hutton, 355 F.3d 206, 210 (2d Cir. 2004). Because we conclude that the choice of law question supports affirmance, we need not address causation.

As the district court correctly found, Reed's failure to demonstrate material nationwide deception reduced his tortious interference claim to a single customer, J & J Industries. This customer was domiciled in Georgia.[2] Applying New York choice of law principles, where the solicited customer and the aggrieved plaintiff are both within a given state, that state has the greatest interest in regulating the behavior at issue, even if the allegedly tortious solicitation originates in a different state. See White Plains Coat &

---

[2] We may take judicial notice at any stage of the proceedings, including on appeal, of a fact that is "'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" Hotel Emps. & Rest. Emps. Union v. City of N.Y. Dep't of Parks & Recreation, 311 F.3d 534, 540 n.1 (2d Cir. 2002) (quoting Fed. R. Evid. 201(b)(2)). The public records contained on the Georgia Secretary of State's website make clear that J & J Industries is incorporated and headquartered in Georgia, a fact confirmed by the location indicated by the McCoy declaration. See Swindol v. Aurora Flight Scis. Corp., 805 F.3d 516, 519 (5th Cir. 2015) (examining "public records contained on the Mississippi Secretary of State's and the Virginia State Corporation Commission's websites" to determine jurisdiction of appellate court and concluding "that the accuracy of these public records . . . cannot reasonably be questioned").

Apron Co. v. Cintas Corp., 460 F.3d 281, 284 (2d Cir. 2006) ("[B]ecause the alleged tort substantially occurred in New York, where the vast majority of the customers are located, and because the vast majority of the alleged harm occurred in New York (as [plaintiff] is a New York company headquartered in New York), we conclude that New York has the greatest interest in regulating the conduct in question and that the district court was correct to apply New York law."). Here, that straightforward choice-of-law analysis demands the application of Georgia law. Accordingly, as plaintiff has conceded that its tortious interference claim would be preempted under Georgia law, we affirm the district court's grant of summary judgment on that claim.

4.    Conclusion

We have considered Reed's remaining arguments and conclude that they are without merit. Accordingly, the judgment of the district court is AFFIRMED.

                              FOR THE COURT:
                              CATHERINE O'HAGAN WOLFE, Clerk of Court

7